## HOME INSURANCE COMPANY v. GAGEN.

[No. 5,500. Filed February 14, 1906. Rehearing denied June 8, 1906. Transfer denied October 25, 1906.]

1. PLEADING. — *Complaint.* — *Contracts.*—*Performance.*—*General Allegations.*—*Special.*—A complaint counting upon a written contract and failing to allege generally the performance by the plaintiff, as provided by §373 Burns 1901, §370 R. S. 1881, must allege with certainty to a common intent the facts showing performance. p. 684.

2. SAME.—*Complaint.*—*Insurance.*—*Conditions.*—*Performance by Plaintiff.* — *"Duly."* — A complaint upon an insurance policy alleging that plaintiff "has duly performed all the conditions on his part to be performed," sufficiently alleges performance by plaintiff, the word "duly" neither adding to, nor detracting from, such allegation. p. 684.

3. SAME.—*Complaint.*—*Insurance.*—*Conditions.*—*Performance.*— *Allegations.*—A complaint upon an insurance policy alleging that plaintiff "has performed all the conditions on his part to

be performed," sufficiently advises defendant and the court that the conditions mentioned refer to the conditions of the policy sued upon. p. 684.

4. PLEADING. — *Complaint.* — *Insurance.* — *Conditions.—Perform-ance.—General Allegations.—Particular.—*Where a general allegation of performance by plaintiff is made in a complaint on an insurance policy, a particular averment which does not contradict such allegation does not injure such complaint. p. 684.

5. SAME. — *Complaint.—Paragraphs.—Insurance.—Conditions.— General Allegation of Performance.—Waiver.—*The waiver, by defendant, of a condition in an insurance policy is inconsistent with a general performance by plaintiff of all the conditions of such policy, it being necessary to make allegations of waiver and performance in different paragraphs of the complaint. p. 685.

6. SAME. — *Complaint.* — *Action.* — *Sufficiency of Facts.* — *Surplusage.—*A complaint stating facts sufficient to constitute a single consistent cause of action is good, though it contain surplus facts relating to a different cause of action. p. 685.

7. SAME.—*Complaint.—Insurance.—*A complaint showing that defendant executed a policy of insurance on plaintiff's barn, covering loss thereof by lightning, in consideration of the payment of a certain premium; that such barn was destroyed by lightning; that plaintiff performed all conditions on his part, and that plaintiff sustained by reason thereof a certain loss, is sufficient on demurrer. p. 685.

8. INSURANCE.—*Policies.—Construction.—*Provisions in an insurance policy written by the insurer are construed most strictly in favor of the assured. p. 686.

9. SAME.—*Policies.—Vacancy.—Void.—*A clause in a lightning policy providing that if the "premises" become vacant, unoccupied or uninhabited, the policy shall be void refers to the farm upon which the insured barn is situated, and not to the barn. p. 686.

10. SAME.—*Policies.—Vacancy.—Defense.—*A breach of a lightning policy caused by the vacancy of the property insured is a defense which can be asserted only by a special answer. p. 686.

11. TRIAL.—*Instructions.—Refusal.—When Harmless Error.—* The refusal to give an instruction not wholly good, or one substantially covered in another given, or one that is inconsistent or adapted to confuse, or one containing supposed facts which the jury finds to have had no existence, is not error. p. 690.

12. SAME. — *Insurance.—Instructions.—Confusing.—*Where the only loss recoverable under a policy was for damages by light-

ning, it is not error to refuse an instruction framed as if the policy covered loss by wind, cyclone or tornado as well as by lightning, such instruction being calculated to confuse the jury. p. 692.

13. TRIAL. — Insurance. — Instructions.—Answers to Interrogatories.—It is not error in a lightning insurance case to refuse to instruct that the jury, though they are confined to the evidence in the case, are not precluded from using their own knowledge of lightning, wind and cyclones, and that, applying their knowledge, they may reject certain evidence which may appear to them incredible, and find that the fall of the barn was caused by a wind and cyclone and not by lightning, where the substance thereof was covered by other instructions and the answers to the interrogatories showed that the insured barn fell because of a stroke of lightning before the storm arrived, such instruction also being an invasion of the province of the jury. p. 693.

14. SAME.—Instructions Requested.—Covered by Those Given.— It is not error to refuse a requested instruction which is substantially covered by one given. p. 694.

15. SAME.—Instructions.—Answers to Interrogatories.—Harmless Error.—Where the answers to the interrogatories show the supposed facts embodied in an instruction to be untrue, the refusal to give such instruction is harmless error. p. 694.

16. APPEAL AND ERROR.—Weighing Evidence.—The Appellate Court will not weigh conflicting oral evidence. p. 694.

17. SAME.—Death of Party.—Judgment.—Where the appellee dies during the pendency of an appeal, judgment will be entered as of the date of submission. p. 695.

From Clinton Circuit Court; Joseph Claybaugh, Judge.

Action by John P. Gagen against the Home Insurance Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Stuart, Hammond & Simms, Guenther & Clark and Joseph F. Sleeper, for appellant.

Kumler & Gaylord and James V. Kent, for appellee.

BLACK, P. J.—The appellant's demurrer to the appellee's complaint for want of sufficient facts was overruled. The action was based upon a policy of insurance on the appellee's east bank barn on certain land in Tippecanoe county, against loss or damage by fire and lightning.

The objection urged against the complaint relates to the averments respecting performance on the part of the appellee. In the policy, made part of the complaint, the appellant agreed to indemnify and make good unto the assured, his executors, etc., after compliance with the conditions of the policy by assured, and within sixty days after receipt by the Western Farm Department of the appellant of Chicago, Illinois, of the proofs required in the policy, etc. It was provided that, "in case of loss, the assured shall, within fifteen days, give this company written notice thereof, at the office of" the department above mentioned, "and within sixty days thereafter shall render to such office, under oath, a particular and detailed statement and proofs of the actual cash value at the time of the loss of any property or articles upon which loss or damage is claimed."

In the complaint it was alleged that the appellee "has duly performed all the conditions on his part to be performed, and that on July 5, 1902, said building known as the 'east bank barn' was totally destroyed by fire and lightning; that the plaintiff shortly thereafter, to wit, on July 12, 1902, gave the defendant written notice of his said loss, at the office of the Western Farm Department of said company at Chicago, Illinois, and on September 2, 1902, gave the defendant due proof of his loss, as called for in said policy of insurance; and that afterward, on September 5, 1902, the defendant returned said proof of loss, and denied all liability under said contract of insurance, and refused to pay said loss."

It is suggested on behalf of the appellant that this general averment of performance of conditions is not sufficient; that "the averment should be that said plaintiff has duly performed all the conditions in said policy on his part, or words of equivalent directness," thereby expressly limiting the reference to conditions to those contained in the policy. It is further objected that the averment relating to notice

and to proof of loss "is the statement merely of a conclusion, and is not sufficient."

Our civil code provides that the complaint shall contain "a statement of the facts constituting the cause of action, in plain and concise language, without repetition, and in such manner as to enable a person of common understanding to know what is intended." §341 Burns 1901, §338 R. S. 1881. A subsequent section of the code provides: "In pleading the performance of a condition precedent in a contract, it shall be sufficient to allege, generally, that the party performed all the conditions on his part. If the allegation be denied, the facts showing a performance must be proved on the trial." §373 Burns 1901, §370 R. S. 1881. If the pleader neglects the privilege thus granted of pleading performance generally, he must state with certainty to a common intent the facts showing performance.

The general statement of performance in the complaint before us was not affected injuriously or beneficially by the word "duly" before the word "performed," whatever may be said of the averment that he "gave due proof of his loss, as called for in said policy of insurance." The learned counsel for the appellant indicate their agreement with this proposition in the form which they suggest as proper, above quoted. It is sufficiently manifest that the pleader had reference to the conditions in the contract in suit. There could be no misapprehension or uncertainty as to the purpose of the pleader in this regard on the part of the defendant or its counsel or the court; and to uphold the suggestion of the appellant would be too great strictness.

Having sufficiently pleaded performance by the general averment, it was not necessary to go on and plead facts showing a performance. If in thus needlessly seeking to show performance by the statement of the facts constituting it there was failure to state

those facts with sufficient certainty, yet there was nothing shown in the pleading which contradicted the general averment or which was inconsistent with it. If it be the intention of the pleader in such case to show waiver of performance of conditions precedent, this should be done in a separate paragraph, for such reliance upon an excuse for nonperformance is not consistent with an assertion of performance. It is contended by the appellant that the complaint does not show sufficiently a waiver of performance. A paragraph of complaint should state a single consistent cause of action, and if we find in the complaint sufficient facts for such purpose we may uphold the pleading, though there be in it unnecessary statements pertaining to another cause of action. We think the complaint was not insufficient on demurrer. See *Hanover Fire Ins. Co.* v. *Johnson* (1901), 26 Ind. App. 122, and cases cited.

The answer was a general denial, and the cause was tried by jury. The appellant's motion for a new trial was overruled.

In the policy it was stipulated and agreed, with and following many other things, that "if the premises described shall be occupied for other than farm purposes, or if they are now vacant, unoccupied or uninhabited, or shall become vacant, unoccupied or uninhabited, without consent hereon, then and in each and every one of the above cases, this policy shall be null and void."

The evidence showed that the barn insured had never had anything in it. The property insured was known, it is said in the policy, as "the east bank barn," and was referred to in the policy as being owned by the assured and situated on and confined to 310 acres in section six, township twenty-two, range three, Tippecanoe county, State of Indiana. The contract was made upon a form containing many blanks, adapted to many kinds of property, and the words "premises herein described" occurred frequently in the

policy, some of which, omitting the blanks for amounts preceding them, were as follows: "On farm implements, utensils, and farm machinery while in said barns and sheds or on the premises herein described, excepting threshing machines;" "on grain in granaries, barns or cribs, or in stacks on the premises herein described," etc.; "on hay in stacks, on cultivated grounds only, on the premises herein described," etc.; "on," etc., certain kinds of animals, "against fire and lightning while in said barns and sheds or at large upon the premises herein described, and against lightning, but not against fire, while off said premises." It was provided that the policy should not be construed to cover property "which is located elsewhere than on the premises or in the buildings as particularly mentioned and described herein." Permission was given "to erect ordinary farm outbuildings in which no fire shall be used, and to erect additions to the within-described buildings."

The farm on which the barn was situated was in the possession of the appellee's tenant, who lived in the dwelling-house thereon. The provision that the policy should be void if the premises were vacant, unoccupied or uninhabited, inserted for the protection of the insurer, is, like all other provisions of the contract, the form of which was provided by the insurer, to be construed most strongly against the insurer and most favorably as to the assured, and is to be regarded as having reference to the continued occupancy of the farm by human beings; the word "premises" here, as throughout the contract, meaning the farm. But this condition, to whatever property it related, could not avail the appellant upon the trial, as its nonobservance would constitute matter of defense to be specially pleaded, and evidence showing such nonobservance, not within the issues in this case, would not affect the appellee's right of recovery.

The policy contained a provision that it should not be construed "to insure against any loss or damage which may occur from winds, cyclones or tornadoes." The court, upon the request of the appellant, instructed the jury, that under the evidence there could be no recovery on account of fire, as there was no evidence tending to show that the barn was destroyed, wholly or in part, or in any way injured, by fire; and the jury specially found, in answer to interrogatories proposed by the appellant, that the barn fell down on a day specified, being the date of its destruction designated in the complaint, and that no part of the barn, at, before, or after the falling thereof on that day, was destroyed by fire. The question about which there is most contention is whether the barn was destroyed by lightning or by a strong wind or tornado.

The jury also found in the affirmative in answer to the question: "Was the barn, on said day, at or before said falling, struck by lightning?" The jury were asked to state the amount of damage done to the barn on account of being struck by lightning, "exclusive of the damage, if any, caused to said barn by wind, cyclone, or tornado," and answered $1,000, which was the amount of the insurance. They further found specially that the barn was not caused to fall down at said time by wind, cyclone, or tornado; that there was not at the time of said accident a strong wind, cyclone or tornado blowing from the south or southwest. "Did said wind, cyclone, or tornado strike said barn on the south side thereof? A. No. Did said wind, cyclone, or tornado, when it struck said barn, move the same from its foundation at the southwest and northwest corners for a distance of from two to four feet? A. No. In so moving said barn, did the north side thereof fall substantially in the direction in which said wind, cyclone, or tornado was moving? A. No. In so falling did the south side of said barn fall over towards the north side thereof? A. Yes." It was specially found that the barn was covered with

shingles, and that there were shingles found from twenty to fifty rods away, but that there was no evidence where they came from. "If the jury find that said barn was moved from its foundation and caused to fall by a stroke of lightning, they will state particularly what part of said barn was so struck by lightning, and how said lightning moved said barn from its foundation and caused the same to fall over. A. We do not know where it struck, but find from the evidence that it ran down a rafter and down a post and crushed the north wall, which caused the barn to collapse." It was found that the accident occurred at about 1:30 o'clock p. m. July 5, and the jury answered in the affirmative to the interrogatory: "Were a number of trees in the course of said wind, cyclone, or tornado, northeast and southwest of the barn in question, blown over by said wind, cyclone, or tornado?" The jury also found that the barn was ninety-eight feet long from east to west, and forty feet wide from north to south; that on the north side, and on the east and west ends, it stood on a brick wall eight or nine feet high; that at the east and west ends were openings in the walls, twelve feet, with sliding doors; that at each end on its south side the barn was supported by a wall of about the same height for a distance of about twelve feet from each corner, and that between said brick corners, on the south side of the barn, it was supported by posts or beams twelve or fourteen feet apart.

Among the instructions requested by the appellant were the following, which the court refused: "(11) If the jury find from the evidence that said barn was first struck by lightning, and thereby weakened, but that said barn would not have fallen had it not been for the wind, cyclone, or tornado, if any, following the stroke of lightning, then in such case the verdict of the jury will be confined exclusively to the damages, if any, occasioned by lightning, and in such case there can be no recovery for the plaintiff on account of the fall of said barn by wind, cyclone, or tornado, and this

is so even though the barn would not have fallen by said wind, cyclone or tornado, if it had not been first weakened by being struck by lightning. (12) The jury, in deciding this case, while they are confined to the evidence in the case, are not excluded from their own knowledge, derived from experience, of the effect of lightning, winds, cyclones, or tornadoes. If the jury, from their own experience and knowledge, deem it absolutely incredible that a barn, such, as the barn in question, could be removed from its foundation, if it was so removed, and caused to fall, by a stroke of lightning, and if the jury also find that at or about the time the barn was struck by lightning, if it was struck, there was a heavy wind, cyclone, or tornado, sufficient to cause the fall of the barn, then the jury, applying their own knowledge derived from experience, may find that the fall of said barn was not occasioned by lightning, but by wind, cyclone, or tornado. (13) The jury are the exclusive judges of the credibility of witnesses and of the weight that should be attached to their evidence. If any witness or witnesses in this case testify to facts, if any, which in themselves are unreasonable and incredible, the jury may disregard the evidence of such witness or witnesses, even though the same is not directly contradicted by the evidence of any other witness. (14) The jury, in deciding the case, are to take into consideration all the circumstances and surroundings of the accident in question which may have reasonable or pertinent bearing thereon. It is proper for them to determine whether at the time in question there was a severe wind, cyclone, or tornado, that did damage to any other building or buildings in the vicinity of the barn in question, or to any tree or trees, and if they find there was a severe wind, cyclone, or tornado at the time in question, it will be proper for the jury to ascertain, if they can from the evidence, the course and direction thereof, and whether the barn in question was in the track thereof. The jury may consider the nature of the fall of the barn in question,

whether it was in fact moved from its foundation, whether the movement of the barn was such as to indicate that in its movement it followed in a general way the direction, if any, of such wind, cyclone or tornado, if any, and may also consider, under all the circumstances, whether it was more probable that the barn should be moved, if it was moved, and caused to fall, if it did fall, from wind, cyclone, or tornado, than from lightning; and upon consideration of all these questions the jury as honest, conscientious men, striving to do exact justice between the parties, should come to a conclusion which, under the evidence, will do justice to both parties."

The appellant complains of the action of the court as to each of these instructions.

11. If an instruction requested is not good as a whole, if any portion of it would be erroneous, or if such an instruction is substantially embraced in instructions given, or if it is not consistent within itself, or if it is adapted to confuse the jury, or if the supposed facts upon which it proceeds are found by the jury to have had no existence, there can be no available error in rejecting it.

It is proper in considering these rejected instructions to examine the instructions given. The court gave eleven of the instructions asked by the appellant. It thus instructed that the policy insures simply against loss or damage by fire and lightning and contains a provision that it does not insure against any loss or damage which may occur from winds, cyclones or tornadoes; that the only question is whether there was any injury to the barn, in whole or in part, by lightning, and if there was any injury to it from wind, cyclone, or tornado, there cannot be any recovery in this action for the injury thereby sustained; that it will be for the jury to determine, in the first place, whether the barn at the time in question was struck by lightning; that if the plaintiff has not established this fact by the preponderance of the evidence, the jury should find for the

defendant; that if the jury find that the plaintiff has established by the preponderance of the evidence that the barn in question, at the time in question, was struck by lightning, then the jury will ascertain the amount of damages, if any, that occurred to the barn on account of lightning, exclusive of the damage, if any, which it received on account of wind, cyclone, or tornado, and in such case the verdict will be confined exclusively to the amount of damage, if any, occasioned by lightning, and any damage in such case, if any, occasioned by wind, cyclone, or tornado, will not be embraced in the verdict, because, as to such damages, if any, on account of wind, cyclone, or tornado, the plaintiff cannot recover; that if the jury find from the evidence that the barn, at the time of its alleged falling, was struck by lightning, and also that it was struck at the same time by a severe wind, cyclone, or tornado, it will be for the jury to determine from the evidence whether the barn was caused to fall by the lightning or by the wind, cyclone, or tornado, and if they find that the falling thereof and the damages complained of were caused solely by wind, cyclone, or tornado, the plaintiff cannot recover, and the jury should find for the defendant; that if the jury find from the evidence that the barn was first struck by lightning, and shortly thereafter struck by wind, cyclone, or tornado, and that it was caused to fall by said wind, cyclone, or tornado, and that all the damage complained of resulted from such wind, cyclone, or tornado, then the jury should find for the defendant; that if they should find from the evidence that the barn was first struck by lightning, the jury should ascertain the amount of damage, if any, occasioned by such lightning, and if the barn, after being so struck by lightning, was caused to move and fall by wind, cyclone, or tornado, the plaintiff cannot recover for any damages occasioned by such wind, cyclone, or tornado, but his recovery will be confined exclusively to the damage, if any, done the barn and occasioned by lightning.

"10. If the jury should find from the evidence that said barn was first struck by lightning, but that it would not have fallen as it did had it not been for wind, cyclone, or tornado striking it soon after it was so struck by lightning, then the plaintiff will not be entitled to recover for damages, if any, occasioned by such wind, cyclone, or tornado, but their verdict will be confined exclusively to the damages, if any, occasioned by the lightning."

The court in its instructions given of its own motion, told the jury, among other things, that they were the exclusive judges of the credibility of the witnesses, the weight of the evidence, and of the facts established by the evidence; that the burden was upon the appellee to prove, by a fair preponderance of all the evidence in the cause, the material allegations of the complaint; that in determining the credibility of the witnesses, the jury had the right to take into consideration, among other matters stated, their knowledge and means of knowledge of the facts about which they testified, their general intelligence, and the reasonableness or unreasonableness of their testimony.

In the eleventh instruction asked by the appellant, above set out, it was sought to present to the jury a hypothetical condition, and to charge the jury that if such condition existed the verdict should be confined exclusively to the damages, if any, occasioned by the lightning, and there could be no recovery on account of the fall of the barn by wind, cyclone, or tornado. It was not stated that the jury might consider such supposed circumstances, if proved, in determining whether the barn fell by wind, cyclone, or tornado, or by lightning. We need not determine whether, if it were so stated in the instruction, it would be a correct instruction, or whether the instruction as framed set forth a correct theory as to the proximate cause in a case of a policy covering loss by wind, cyclone, or tornado, as well as loss by lightning. The court plainly informed the jury that there could not be any recovery for

the fall of the barn by wind, cyclone, or tornado, but that the damages, if any, must be exclusively for loss or damage by lightning, under any and all supposable conditions, because the evidence showed no loss by fire, and the policy did not cover loss by wind, cyclone, or tornado. The instruction seems to have been framed for the purpose of preventing recovery of damages for loss by wind, cyclone, or tornado, and of confining the damages to loss by lightning, under supposed circumstances, as if the case were one in which the policy covered loss by wind, cyclone, or tornado, as well as loss by lightning. It was not improper to refuse so to contribute to confusion in the minds of the jurors.

Concerning the twelfth instruction, it may be said that in instructions given the jury were told of their right to consider the reasonableness or the unreasonableness of the statements of the witnesses, and that by this rejected instruction it was proposed not merely to authorize the jury to exercise their own actual knowledge derived from experience of the effects of lightning, winds, cyclones, or tornadoes, but to authorize them, from their own actual experience and knowledge, without regard to the scope or variety of their experience and knowledge, to deem or infer it to be absolutely incredible that such a barn could be removed from its foundation and caused to fall by a stroke of lightning. The learned counsel differ widely, and, we doubt not, sincerely, in their opinions as to the manifestations and effects of lightning, and counsel for the appellant advise us that we may learn something advantageous on this subject from books which especially treat of it, yet the proposed instruction does not refer the jury to their experiences and knowledge of cases like the one to be decided. The instruction proceeds to inform the jury that if they thus, from their own experience and knowledge, deem such a state of facts to be incredible, and if they also find that "on or about the time the barn was struck by lightning" there was a heavy wind, cyclone, or tornado, sufficient to

cause the fall of the barn, then they, applying their own knowledge derived from experience, however limited, might find its fall was not occasioned by lightning, but was caused by wind, cyclone, or tornado.

Now, if it was true, as some of the witnesses testified and as the jury viewed the matter, that the barn was not standing when the wind came, but in fact fell when struck by lightning preceding the wind, the jury could not, by applying their own knowledge derived from their experience, infer that the fall was caused by the wind. The instruction does not expressly limit the inference, by it authorized, to a case where the barn was still standing when the wind arrived. Besides, this instruction seems to encroach upon, if not to invade, the province of the jury by suggesting the conclusions of fact to be drawn from the evidence; and considered in connection with the instructions given, and the special findings of the jury, we cannot regard the refusal to give this instruction as erroneous.

The thirteenth instruction was sufficiently embraced in the instructions given.

As to the fourteenth instruction, if it was not erroneous thus to authorize the jury to base their verdict upon probability, yet if it was true as found by the jury that the barn was demolished by lightning before the wind came, the refusal of the instruction could not be harmful. The instructions given seem to have placed the case before the jury without unfairness to the appellant.

It is earnestly contended on behalf of the appellant that the verdict was not sufficiently supported by the evidence, and in this connection, as throughout the case, we are earnestly urged to adopt the theory that the damage to the barn was such as could not have been caused by lightning, but must have been caused by wind. Undoubtedly, some of the facts of the condition of the

ruins seem to be such as might have been the result of a strong wind, and there were conditions which could scarcely have been so produced, but might have been caused, by lightning. It would be as difficult for us to attribute the damage to the wind as to refer it to lightning.

We have already made this opinion somewhat lengthy, and to attempt to set out the evidence with fairness would require more space than we deem it proper to take. The question thus in dispute is one of fact, and we cannot interfere with the decision of it in the trial court with requisite confidence in our conclusion to the contrary.

The death of the appellee since the submission of the cause in this court having been suggested, the judgment is affirmed as of the May term, 1904.