STATE FARM *v.* SHUMAN, ADMX.

[No. 1-276A29. Filed December 22, 1977. Rehearing denied January 25, 1978. Transfer denied June 16, 1978.]

*Myrl O. Wilkinson, Dix, Patrick, Ratcliffe & Adamson*, of Terre Haute, for appellant.

*John A. Kesler*, of Terre Haute, for appellee.

LYBROOK, J.— Appellant State Farm Mutual Automobile Insurance Company appeals from an adverse judgment awarding appellee Hattie Shuman, as administratrix of her brother's estate, the face amount of the insurance policy sued upon in the sum of $10,000 plus interest and punitive damages in the sum of $10,000.

We affirm.

To understand the posture of this appeal it is necessary to recount in some detail the procedural background of the case and the factual circumstances which gave rise to the litigation. Hattie Shuman, as administratrix of her brother's estate, brought the action to recover a $10,000 accidental death indemnity under an automobile insurance policy owned by her brother, Billy Greenlee. She also sought an award of punitive damages for State Farm's refusal to honor the claim. In her personal capacity, Shuman sought to recover for damages to her automobile.

According to the parties' stipulation of facts, "the decedent Billy L. Greenlee died on or about August 19, 1968, when the vehicle he was in was struck at a railroad crossing on the Indiana/Illinois line by a railroad train." Decedent's automobile insurance policy

with State Farm afforded an accidental death benefit of $10,000 payable to his estate under the following conditions:

> ". . . in event of the death of . . . insured which shall result directly and independently of all other causes from bodily injury caused by accident and sustained by the insured while occupying or through being struck by an automobile . . ."

The policy elsewhere contained a specific exclusion to the effect that the "insuring agreement IV [accidental death indemnity] does not apply . . . to bodily injury due to suicide, sane or insane."

Following State Farm's denial of the claim, Shuman brought suit on August 18, 1970, to recover the face amount of the policy plus interest (and automobile damages), but did not at that time allege a claim for punitive damages. State Farm's answer, filed on December 22, 1970, denied the complaint's allegations. A pretrial conference was held finally on May 17, 1972. After several changes in the trial date, the cause was set for trial on October 1, 1974.

On September 20, 1974, Shuman moved to amend her complaint by adding a claim for punitive damages (Count II). Leave to amend was granted, over State Farm's objection, and the trial was again rescheduled.

On October 28, 1974, State Farm successfully attacked the claim for punitive damages with a motion to dismiss for failure to state a claim. Thereafter, on June 10, 1975, Shuman filed another motion to amend Count II and, over State Farm's objection, the court granted her leave to plead over the amended complaint. State Farm subsequently filed motions to strike and to dismiss Count II pursuant to Ind. Rules of Procedure, Trial Rule 12(F) and 12(B)(6), both of which were overruled. On July 25, 1975, State Farm filed an answer to the amended complaint and a motion to dismiss for failure to prosecute in the name of the real party in interest, which motion was overruled. Trial by jury finally commenced on September 16, 1975.

The contested factual issue at trial was whether Billy Greenlee committed suicide or died as a result of an accident. The record discloses that on the evening of August 18, 1968, Greenlee had

dinner with Hattie and Melvin Shuman. Greenlee and Melvin Shuman each had a few drinks ("a couple of vodkas and squirts and maybe a beer or two"), watched TV and talked about going hunting and fishing the following weekend. Melvin Shuman conveyed a message to Greenlee that Walter Fortune had a job for him and wanted to see him. Greenlee left around 11:30 P.M. to go to the store for cigarettes and to purchase something for his sister and also to see "a friend" in W. Terre Haute. Rather than drive his car, which had a defective radiator hose, Greenlee borrowed the Shuman's car, a 1961 Dodge, which was described as a "pile of junk", with loose battery terminals, that had "died" on previous occasions.

The collision occurred on the State Line Road crossing, west of W. Terre Haute and 1½ to 2 miles from the Shuman home. The railroad crossing, located at the bottom between two hills, was so overgrown with weeds that you "have to be almost on the track before you could see if a train was coming." There were no automatic flasher lights and the only warning was a railroad crossing sign.

The locomotive engineer testified that the train approached the crossing, at 60 miles per hour, from a righthand curve. He activated the whistle and bell at the whistling post, around 1500 feet from the crossing. From where he first noticed the vehicle straddling the tracks, he kept blowing the whistle thinking the car would move; it then took the train 18-21 seconds to reach the crossing. During this time, he observed the car parked, without any lights, and did not detect anyone in or about the car. Following the collision, he inspected the car's engine block and radiator and found that "it was warm, slightly warm — cool, actually, to the touch."

The coroner's report stated that the cause of death was accidental.

Much of the testimony at trial concerned Billy Greenlee's state of mind. Greenlee was 38 years old, unemployed, and only recently divorced for the second time. He previously had been working as manager of a local tavern, but his second wife got the job when

their marriage ended. In July, 1969, he moved into the Shuman house. He first learned that his wife had sued for divorce on July 11th, when he saw the divorce notice in a newspaper. He had a girl friend whom he had been seeing since then. Several weeks before his death, Greenlee initiated a change in his ordinary life insurance policy to name Hattie Shuman beneficiary, instead of his ex-wife, because "he didn't want his ex-wife to get it." The week before his death he was taking care of his mother's house while she was away on vacation. Greenlee talked and joked with her on the telephone and said he would see her on Tuesday.

Greenlee had been hospitalized in March, 1968, for acute gastritis, inflamation of the stomach, and other symptoms of chronic alcholism. The attending physician testified that Greenlee had a long history of alcoholism, duodenal ulcer, and cirrhosis of the liver; the prognosis as of Greenlee's last examination in April was that he would do well without alcohol. The physician also stated that Greenlee had no suicidal tendencies or other symptoms which would call for psychiatric treatment and that on his discharge from the hospital, Greenlee was doing better. The physician did not recall having prescribed medicine, except vitamins, or attending to Greenlee thereafter other than for a routine checkup. State Farm's insurance agent, Daniel Evers, testified that when he saw Greenlee at a bar three weeks prior to the collision, Greenlee had lost weight, was dejected and drinking, and mentioned he had only one month to live. At the time Evers thought Greenlee had cancer but learned later, from the physician's medical report, that this was not the case.

The other testimony at trial pertained to State Farm's handling of the claim. The evidence most favorable to the appellee reveals that Shuman made four or five trips to see insurance agent Daniel Evers before they "finally got down to business." At these meetings, prior to October 10, 1968, it is unclear whether Shuman discussed anything other than the damage to her car, but Evers did not offer any information about the death benefit. She first became aware of the accidental death benefit shortly before the October 10th meeting, when she discovered the policy among her brother's papers. At that meeting, Evers attempted to get

Shuman to sign a release "giving up all claims to everything" in return for $200 on the car. When Shuman asked about the accidental death benefit, Evers "hummed and hawed around and then went through his papers" and, after agreeing that there was one, asked if she would be willing to settle for half because "Bill was an alcoholic and under the law we don't have to pay off on him being an alcoholic." Evers continued to press for a settlement by indicating the consequences she would face if she brought suit. He said the insurance company would try to prove suicide and, even if she did win, the lawyers would get most of it and "besides you can't beat an insurance company." At the time of this conversation, Evers was aware that Shuman had been appointed administratrix of Greenlee's estate and was represented by an attorney.

The jury's verdict was in Shuman's favor on both counts, judgment thereon was entered on September 22, 1975, and State Farm subsequently perfected this appeal.

The various specifications of error relate to the following: (1) rulings on certain pretrial motions; (2) the failure to issue a pretrial order following the pretrial conference; (3) the reception of evidence at trial; (4) the refusal to give certain requested instructions; and (5) whether there was sufficient evidence to support the verdict on both counts.

## I. RULINGS ON PRETRIAL MOTIONS

State Farm contends that the trial court abused its discretion in granting Shuman leave to amend her complaint by adding a claim for punitive damages. The original complaint was filed on August 18, 1970. Shuman's motion to amend, on September 20, 1974, came nearly four years after the issues had been closed by answer, almost two and a half years after the pretrial conference and within two weeks of the scheduled trial date.

Pleading amendments by "leave of court" are governed by TR. 15(A), which provides that "leave shall be given when justice so requires." The stated policy of this court and the Surpeme Court of Indiana is to freely allow such amendments in order to bring all matters at issue before the

court. *Huff v. Travelers Indemnity Co.* (1977), 266 Ind. 414, 363 N.E.2d 985. Inasmuch as the rule contains no time proscription, the matter of timeliness is within the trial court's discretion. *Henline, Inc. v. Martin* (1976), 169 Ind. App. 260, 348 N.E.2d 416. The grant or denial of leave to amend is therefore reviewable only for an abuse of discretion and, unless prejudice is shown, it will be presumed there was no error. *Selvia v. Reitmeyer* (1973), 156 Ind. App. 203, 295 N.E.2d 869.

Although there was considerable delay in the case at bar, we nevertheless are unable to see how State Farm was prejudiced. Claims of incurring the burden of further discovery, preparation and expense do not constitute a showing of prejudice amounting to reversible error. The trial court, moreover, reset the trial date on its own motion to provide State Farm with additional preparation time. As to State Farm's second claim of prejudice, the fireman on the train, who died in the interim, was not an indispensible witness. The fireman was one of three persons riding in the engine of the train which struck decedent's car. One of the other eyewitnesses, the locomotive engineer, appeared at trial and offered testimony on behalf of State Farm. Since his testimony was not seriously contradicted or disputed, the fireman's testimony would merely have been cumulative.

The cases cited by State Farm do not force a contrary conclusion. *Selvia, supra; Troxel Manufacturing Co. v. Schwinn Bicycle Company* (6th Cir. 1973), 489 F.2d 968; *Nevels v. Ford Motor Co.* (5th Cir. 1971), 439 F.2d 251; *Boris v. Moore* (7th Cir. 1958), 253 F.2d 523. We are concerned here with the granting of a motion to amend the complaint, not with whether it would have been an abuse of discretion to deny such a motion. The other cases cited involved clear instances of prejudice. *Strauss v. Douglas Aircraft Co.* (2d Cir. 1968), 404 F.2d 1152 (leave to amend answer to plead statute of limitations should have been denied because delay prevented plaintiff from bringing action in another jurisdiction); *Ricciuti v. Voltarc Tubes, Inc.* (2d Cir. 1960), 277 F.2d 809.

This analysis applies with equal force to State Farm's contention that the trial court erred in later granted Shuman leave to

plead over her amended complaint. After Shuman was permitted to add the punitive damage count, State Farm filed a TR. 12(B)(6) motion to dismiss the count, which was sustained on January 7, 1975. On June 10, 1975, five months later, Shuman filed another motion to amend which the trial court granted over State Farm's objection. Again, we must assume that the trial court did not abuse its discretion, since there has been no showing of prejudice.

However, State Farm presents the additional argument that TR. 12(B) must be read in conjunction with TR. 6(C)(2), which imposes an absolute deadline of ten days, after a TR. 12(B)(6) motion is granted, within which plaintiff may correct deficiencies in the complaint. We disagree. The suggested interpretation leads to an untenable conflict with TR. 15(A), which is contrary to the well settled principle that our Rules of Trial Procedure are to be construed together and, if possible, harmoniously.

The filing of a TR. 12(B)(6) motion changes the time within which a pleading may be amended *as of right*. If the motion is sustained, plaintiff has an absolute right to correct any deficiencies in his complaint within ten days. Thereafter, he may amend with permission of the court pursuant to TR. 15(A), which requires either written consent of the adverse party or leave of the court. TR. 12(B)(8).

Trial Rule 6(C) does not alter these time provisions. Subsection (2) provides that corrective action (i.e., to remedy a deficient complaint) shall be taken within ten days after the court sustains the motion to dismiss. We read this time deadline to refer only to amendments as of right; it does not preclude amended pleadings under the authority of TR. 15(A). The language of TR. 6(C) supports this interpretation: "The service of a motion permitted under Rule 12(B) alters the time for service of responsive pleadings as follows, *unless a different time is fixed by the court.*" (Emphasis added).

State Farm next alleges that the trial court erred in overruling its TR. 12(B)(6) motion to dismiss addressed to Count II of Plaintiff's complaint, as amended. State Farm argues that the court for punitive damages fails to state a claim upon which relief can be

granted, because it does not comply with TR. 9(B), which requires that "the circumstances constituting fraud . . . shall be specifically averred."

When a TR. 12(B)(6) motion is presented, the complaint is subject to *dismissal* only when it appears to a certainty that the plaintiff would not be entitled to relief under any set of facts. *State v. Rankin* (1973), 260 Ind. 228, 294 N.E.2d 604; *Gentry v. United Slate, Tile & Construction Roofers, Local 250* (1974), 162 Ind. App. 246, 319 N.E.2d 159. Shuman's complaint, as amended, clearly withstands this test.

In regard to the TR. 9(B) challenge, we observe first of all that failure to comply with the special pleading provisions of TR. 9(B) is not fatal. The courts and commentators generally agree that compliance should not be compelled by outright dismissal of the action. Other remedies, such as a motion for a more definite statement or the use of discovery procedures, are available. *State v. Rankin, supra.* Even those cases which dismiss the complaint do so almost always with leave to amend. See 5 Wright & Miller, Federal Practice and Procedure: Civil § 1300; 2A Moore's Federal Practice § 903. The authorities cited by State Farm do not reflect a contrary position.[1]

Secondly, a complaint alleging punitive damages is not subject to the *particularity requirement* of TR. 9(B) in any event. The "fraud" which must be specifically alleged under TR. 9(B) is actionable fraud. *Jerry Alderman Ford Sales, Inc. v. Bailey* (1972), 154 Ind. App. 632, 291 N.E.2d 92, aff'd on rehearing, 294 N.E.2d 617 (1973). In Indiana an award of punitive damages does not require proof of actionable fraud, but may be based on a serious wrong which is tortious in nature.[2] *Vernon*

---

1. In *Felton v. Watson & Co., Inc.* (2d Cir. 1974), 508 F.2d 577, leave to amend was denied only because plaintiffs were both lawyers and had several opportunities to draft an adequate complaint. See also *In re Cassidy's Estate* (1954), 77 Ariz. 288, 270 P.2d 1079.

2. We are required to look at the law at the time the decision on the motion to dismiss was rendered. *Medvid v. State* (1977), 172 Ind. App. 27, 359 N.E.2d 274; *Wallace v. Board of Commissioners of Shelby County* (1910), 46 Ind. App. 695, 92 N.E. 660 (on petition for rehearing). Although at that time there was a conflict

*Fire & Casualty Ins. Co. v. Sharp* (1976), 264 Ind. 599, 349 N.E.2d 173; *Jones v. Abriani* (1976), 169 Ind. App. 556, 350 N.E.2d 635. Consequently, a complaint which requests punitive damages in an action for breach of contract need not contain all of the elements which must be specifically alleged for actionable fraud. It is enough if the complaint alleges, as was done in this case, an act committed with a fraudulent state of mind. A general averment as to state of mind is sufficient. TR. 9(B); *Jerry Alderman, supra.*

State Farm further complains that the trial court erred in overruling its TR. 12(B)(6) motion to dismiss the action as not being prosecuted by the real party in interest in accordance with TR. 17(A).

The first part of State Farm's challenge is directed to Hattie Shuman's authority as administratrix of her brother's estate. State Farm argues that under IC 1971, 29-1-10-1 (Burns Code Ed.), Shuman could not have been appointed the sole administratrix of the estate because she was a resident of the State of Illinois. In the supporting memorandum attached to its motion, State Farm included a copy of portions of a deposition taken from Melvin Shuman who stated therein that he and his wife had a "residence address" in Paris, Illinois. Any right which State Farm had to predicate error on Hattie Shuman's authority as administratrix, however, is deemed waived. State Farm's challenge raises the question of Shuman's capacity to sue, not a problem of real party in interest.

The two concepts are often confused, as was done here, but it is imperative that they be distinguished and properly raised at trial. See 6 Wright & Miller, Federal Practice and Procedure: Civil § 1542 at 639. A real party in interest objection asserts that plaintiff is not the owner of the claim sued on. The TR. 17(A) question is raised by means of a TR. 12(B)(6) motion. *State v. Rankin, supra.* Both parties here concede that this action belongs to Billy Greenlee's estate and must be

---

among authorities in Indiana, the First District had dispensed with the rule requiring an independent tort to support an award of punitive damages. See 8 Ind. L. Rev. 260 (1975).

maintained by the administrator of the estate as the real party in interest.

Where an action is brought in a representative capacity, want of title in plaintiff to the character in which he sues is a question of capacity to sue. If State Farm wished to challenge Hattie Shuman's authority as administratrix, an objection should have been made to her lack of capacity to sue in accordance with TR. 9(A).[3] See *Young v. Pattridge* (N.D. Miss. 1966), 40 F.R.D. 376. We are compelled to hold that State Farm's failure to plead as an affirmative defense Shuman's lack of capacity to sue constituted a waiver of that defense. *Warner v. Young America Fire Dept.* (1975), 164 Ind. App. 140, 326 N.E.2d 831; *Stone v. Public Service Company of Indiana, Inc.* (1973), 157 Ind. App. 328, 300 N.E.2d 121.

State Farm's second real party in interest challenge is addressed to the claim for damage to Shuman's automobile. State Farm contends that Hattie Shuman (in her personal capacity) was not the real party in interest because title to the vehicle was in the name of Melvin Shuman.

Although this objection was properly denoted, we find that the issue was waived in view of the following stipulation which was made after the trial court's ruling on the motion to dismiss:

> "Prior to trial, the parties stipulate that the amount of damage to the automobile of Hattie Shuman was Two Hundred Dollars ($200.00) and that in the event that plaintiff recovers in this action, defendant will pay plaintiff the sum of Two Hundred Dollars ($200.00) and that *the issues are not to be tried as a part of this cause*." (Emphasis added).

We reject State Farm's argument that this stipulation was not intended to preclude its right to predicate error on the trial court's decision. By the plain language of the stipulation, as emphasized above, the parties agreed to remove this issue from the case.

---

3. Trial Rule 9(A) reads:

"(A) Capacity. It is not necessary to aver the capacity of a party to sue or be sued, the authority of a party to sue or be sued in a representative capacity, or the legal existence of an organization that is made a party. The burden of proving lack of such capacity, authority, or legal existence shall be upon the person asserting lack of it, and shall be pleaded as an affirmative defense."

## II. FAILURE TO ISSUE A PRETRIAL ORDER

State Farm contends that the trial court's failure to enter an order following the pretrial conference is reversible error. The record discloses that both parties submitted briefs for the resolution of certain disputed issues. Thereafter, when the trial court failed to issue a pretrial order, no objection was made.

We agree wholeheartedly that a pretrial order should have been made in this case. One of the contested issues concerned the allocation of the burden of proof on the question of accidental death; another was the problem of presumptions and suicide. Both issues involved questions of law which are within the province of the court and are proper matters for consideration at a pretrial conference. TR. 16(A)(6). The failure to rule on these outstanding issues in advance of trial undoubtedly hampered both parties in the presentation of their cases.

At the same time we cannot ignore the fact that State Farm made no objection to the court's failure to enter a pretrial order. Where a pretrial order *has been entered*, a party must make his objections (or a motion to amend) at the outset to any aspect of the order with which he does not agree or else he will be barred from raising the issue on appeal. *Hodgson v. Humphries* (10th Cir. 1972), 454 F.2d 1279. So as not to invite error, a party should be required to make a similar objection (by requesting an order or directing trial motions) to the lack of a pretrial order. By not doing so, State Farm has failed to preserve the issue for appeal.

We choose nevertheless to address this issue on the merits as well. While acknowledging that the trial court may have erred in failing to enter a pretrial order, we cannot ascribe reversible error to the failure in this case. Trial Rule 16(J) provides that "the court shall make an order which recites ... the *agreements* made by the parties as to any of the matters considered which limit the issues for trial ..." (Emphasis added). Since State Farm plainly admits that no agreement was ever reached concerning the limitation of issues for trial, the error, if any, was harmless. *Scott County School District One v. Asher* (1974), 160

Ind. App. 299, 312 N.E.2d 131, aff'd., (1975), 263 Ind. 47, 324 N.E.2d 496; *Burger Man, Inc. v. Jordan Paper Products, Inc.* (1976), 170 Ind. App. 295, 352 N.E.2d 821.

## III. RECEPTION OF EVIDENCE

State Farm contends that the trial court erred in refusing to admit into evidence Shuman's original complaint and first amended complaint. Since the original complaint did not allege punitive damages and the first amended complaint, which added the count for punitive damages, contained no reference to "fraud", State Farm argues that they were admissible as admissions of a party-opponent.[4]

We hold that the trial judge acted within the proper bounds of his discretion. The rule announced in *Boots v. Canine* (1883), 94 Ind. 408, bears reiteration. Withdrawn, amended, or superseded pleadings, which disappear from the record as judicial admissions, are nevertheless admissible as evidence in contradiction and impeachment of the party's present claim.[5] The rule does not end here, however. To be admissible, the pleadings must contain evidence which is competent *and* relevant to the issue. The question of relevancy is within the trial court's discretion and in this regard State Farm has not presented a clear showing of an abuse of discretion. See *State v. Lee* (1949), 227 Ind. 25, 83 N.E.2d 778.

State Farm's other allegations of error concern the admission into evidence of certain rebuttal testimony. The objection made in each instance is that the testimony of the various witnesses should have been presented in Shuman's case in chief.

We would agree that, in furtherance of orderly trial procedure,

4. State Farm uses the term "admission against interest" which, in a strict sense, is incorrect. Although a party admission is usually against interest when made, such admissions are distinct from, and may come in without satisfying the requirements for, declarations against interest. See McCormick on Evidence (2d ed.), § 276 at 670.

5. We have assumed, *arguendo*, that these prior pleadings qualify as admissions. Shuman correctly points out that the pleading in *Boots* involved an *express* admission. We offer no opinion on whether these prior pleadings evincing the party's *omission* to file a claim would in fact be admissible as an *implied* admission.

a party should not withhold part of his proof and introduce it as rebuttal instead of offering it as part of his case in chief. See 4 Jones on Evidence (6th ed.), § 24.1 at 75. However, the order of the admission of evidence at trial is within the sound discretion of the trial court. *Board of Commissioners of Delaware County v. Briggs* (1975), 167 Ind. App. 96, 337 N.E.2d 852. To warrant reversal for the admission of evidence out of its proper order, even for the admission of rebuttal evidence which should have been presented in plaintiff's case in chief, there must be an abuse of the trial court's discretion tending to defeat the ends of justice. *Indianapolis Transit, Inc. v. Moorman* (1963), 134 Ind. App. 572, 189 N.E.2d 111.

We are unable to find any such abuse of discretion here. State Farm's claims of prejudice[6] are without support in view of the opportunity given State Farm to cross-examine the rebuttal witnesses. See *Lamar v. State* (1964), 245 Ind. 104, 195 N.E.2d 98.

State Farm's further assertion that certain rebuttal evidence was hearsay and thus improperly admitted is also without merit. State Farm refers to the testimony of Hattie and Melvin Shuman as to conversations they had with Greenlee on the night in question, Walter Fortune's testimony concerning his discussions with Greenlee and Melvin Shuman about a job opening for Greenlee, and the written testimony of Greenlee's mother regarding her telephone conversation with Greenlee. In each case the testimony was offered, not for the truth of the assertions made, but as a factual occurrence which was circumstantial evidence of Billy Greenlee's state of mind. Such statements are not hearsay. *Blue v. Brooks* (1973), 261 Ind. 338, 303 N.E.2d 269; *Indianapolis Newspaper, Inc. v. Fields* (1970), 254 Ind. 219, 259 N.E.2d 651, cert. denied, 400 U.S. 930.

## IV. INSTRUCTIONS

State Farm claims that the trial court erred in refusing to give its tendered instructions numbers 1, 2, 4, 6, 8, 9 and 10.

---

6. State Farm maintains it was prejudiced in two respects:

(1) that rebuttal testimony was used to restate and "clean up" testimony in plaintiff's case in chief; and (2) that since this was the last evidence the jury heard in a long trial, it undoubtedly influenced the outcome of the case.

Shuman argues that any allegation of error regarding the refusal of a tendered instruction must be deemed waived by State Farm's failure to object thereto at trial. This argument merits our attention only because we have been unable to find any case law on point under our new Indiana Rules of Trial Procedure. Cf., *Johnson v. State* (1976), 265 Ind. 470, 355 N.E.2d 240. We hold, to the contrary, that a party requesting an instruction to the jury is not required to make a specific objection if the court subsequently fails to give it.

Prior to the 1971 amendment to TR. 51(C), the rule stated that "[n]o party may claim as error the giving or the *failure to give an instruction* unless he objects thereto before the jury retires . . ." (Emphasis added). The 1971 amendment specifically deleted the italicized phrase, thereby making it unnecessary to object to the failure to give a requested instruction. Trial Rule 51(C) now reads: "No party may claim as error the giving of an instruction unless he objects thereto before the jury retires . . ." See 3 Harvey, Indiana Practice at 33-34 (1976 Supp.). Hence, the action of the court in refusing a properly tendered instruction automatically gives the tendering party an exception to the ruling. Cf., *Dulin v. Long* (1944), 115 Ind. App. 94, 54 N.E.2d 652 (dealing with former Ind. Sup. Ct. Rule 1-7).

*Tendered Instruction No. 1.* We start with the proposition that an instruction may be refused if it merely varies the language of a given instruction. *Ashton v. Anderson* (1972), 258 Ind. 51, 279 N.E.2d 210; *Prudence Life Ins. Co. v. Morgan* (1966), 138 Ind. App. 287, 213 N.E.2d 900. That part of State Farm's requested instruction which conditions any award of punitive damages "upon a specific finding of facts constituting malice, fraud, and oppression" was covered by the court's instruction no. 7 which uses only slightly different terminology:

"Punitive damages are defined as damages awarded by reason of a wrongful act that is fraudulently or willfully done in an abusive, wanton, or oppressive manner or in reckless disregard of the rights of others."

The concept of "malice" is the only term omitted but is implicit in the language used by the court. See *Indianapolis Bleaching Co. v. McMillan* (1916), 64 Ind. App. 268, 113 N.E. 1019.

The second part of State Farm's requested instruction refers to the amount of punitive damages allowable. The error, if any, was not harmful because Shuman's award of $10,000 in punitive damages was equal in amount to the recovery on the insurance contract. See *Indiana Pipe Line Co. v. Christensen* (1924), 195 Ind. 106, 143 N.E. 596 (requested instruction could not have reduced amount of verdict).

*Tendered Instruction Nos. 2 and 4.* We consolidate our consideration of these requested instructions because they each are erroneous, in part, for the same reason. The pertinent sections read as follows:

> "In the event that you determine from the evidence that the Plaintiff has failed to meet this burden of proof or if you find that Defendant acted in good faith in the investigation, negotiation, and defense of this claim, then you may not award punitive damages." (No. 2).

> "If you then find that the Defendant acted in good faith, and in a manner that a reasonable insurance company would have acted under the same set of facts or circumstances, based upon that investigation in refusing payment by reason of suicidal death, then you shall not award punitive damages, even though you find the Defendant liable on the insurance policy." (No. 4).

The passages quoted are both mandatory in form since they purport to be conclusive on the findings which would preclude an award of punitive damages. Yet the set of facts enumerated omits one fact which, if found, would support an award of punitive damages; namely, whether State Farm, through its insurance agent, misrepresented the policy coverage to Hattie Shuman. This failure to include all the elements that are essential for State Farm to prevail renders these portions of the tendered instructions erroneous. *Perry v. Goss* (1970), 253 Ind. 603, 255 N.E.2d 923; *Snow v. Sutton* (1961), 241 Ind. 364, 170 N.E.2d 816.

Having found a portion of the requested instruction to be erroneous, we need not consider the rest of the instruction. Where

a request to charge contains several propositions, one or more of which are incorrect, the trial court may refuse the entire request since it must be refused or given as a whole. *Diamond Block Coal Co. v. Cuthbertson* (1906), 166 Ind. 290, 76 N.E. 1060; *Home Ins. Co. v. Gagen* (1906), 38 Ind. App. 680, 76 N.E. 927.

*Tendered Instruction No. 6.* State Farm's requested instruction indicates that (1) fraud is never presumed and (2) must be proved by clear and convicing evidence. State Farm refers us to *Wallace v. Mattice* (1888), 118 Ind. 59, 20 N.E. 497, which upheld an instruction containing nearly identical language.

We hold, however, that the court did not err in refusing this instruction. To say that fraud is never presumed means simply that fraud, as a matter of fact, cannot be taken for granted and that it must be proved by the party making the charge. See *J.M. Robinson Norton & Co. v. Stalcup* (1914), 58 Ind. App. 370, 106 N.E. 395. The trial court's instruction no. 7 adequately covered this point by stating that "[p]laintiff . . . has the burden of proving his claim of punitive damages in that the defendant acted fraudulently in denying plaintiff's claim." The burden of proof required was adequately covered by the court's instruction no. 2 which placed the burden of proving fraud on Shuman and defined the applicable standard in civil cases, "preponderance of the evidence".

We reject State Farm's further argument that its instruction was necessary in order to correct misleading impressions given by some of the court's instructions. For reasons we will discuss later in connection with tendered instruction no. 10, a party must make a specific objection at trial if he wishes to assert error in this manner.

*Tendered Instruction No. 8.* State Farm's requested instruction would have charged the jury that "there is no presumption of law regarding suicide." We need not consider the other points contained in the tendered instruction. Since this one proposition misstates the law, the court was entitled to refuse the entire request.[7]

---

7. Shuman has argued throughout her brief that State Farm waived the right to predicate error on any tendered instructions relating to suicide. The issue of

In Indiana, as in virtually every other jurisdiction, the law presumes that death was not caused by suicide, but that it resulted from involuntary causes. *Modern Woodmen of America v. Kincheloe* (1911), 175 Ind. 563, 94 N.E. 228; *State Farm Life Insurance Co. v. Spidel* (1963), Ind. App., 194 N.E.2d 96, reversed on other grounds, 246 Ind. 458, 202 N.E.2d 886 (1964); *Prudential Insurance Co. v. Dolan* (1910), 46 Ind. App. 40, 91 N.E.2d 970. See 21 Appleman, Insurance Law and Practice, § 12155.

The presumption of law against suicide is, however, a rebuttable one. *Prudential Insurance Co. v. Dolan, supra*. Such presumptions only place upon one party the duty of going forward with the evidence and, as rules of law, are for the judge's guidance in determining the order of proof or whether a *prima facie* case has been made. Our cases hold that presumptions of law are not evidence and therefore have no proper place in instructions. *Kaiser v. Happel* (1941), 219 Ind. 28, 36 N.E.2d 784; *Cleveland, C., C. & St. L. Ry. Co. v. Wise* (1917), 186 Ind. 316, 116 N.E. 299.

State Farm's reliance on *Modern Woodmen of America v. Craiger* (1910), 175 Ind. 30, 92 N.E. 113, is misplaced. That case does not stand for the proposition that there are no presumptions of law regarding suicide. Language to the effect that "there was no legal presumption pertinent or available to either party", while perhaps inartfully stated, means only that no fact in issue which the jury is called upon to determine may be presumed.[8] The opinion goes on to make this clear:

---

suicide, according to Shuman, was never made a part of the case since State Farm failed to plead it as an affirmative defense per TR. 8(C). Shuman filed the equivalent of a motion in limine on the issue of suicide at the commencement of trial and subsequently objected when State Farm first introduced evidence on the subject. Her objections were overruled, however, and suicide evidence came in and was contested at trial. Thereafter, Shuman offered no objections to the giving of instructions related to suicide. Under these circumstances, we conclude that Shuman forfeited the right to raise this argument on appeal.

8. State Farm argues that the requested instruction conveys the concept that "There is no presumption relative to suicide". If State Farm is asking us to interpret the requested instruction to mean that no fact in issue (i.e., cause of death) may be presumed, we decline to do so. The instruction tendered states, "there is no presumption of *law* regarding suicide," and as such is erroneous.

"It is true that death by suicide is unnatural, and it is not inaccurate to say negatively that the law will not presume an unexplained death to have been suicidal, as it will not presume the existence of fraud, bad faith or dishonest conduct. In determining the charge of suicide, the jury may properly consider the facts and circumstances bearing upon that question given in evidence, in the light of their common knowledge and experience that mankind instinctively love life and generally shun death, although occasionally men, both sane and insane, take their own lives. The cause of death was directly in issue in this case, to be decided not by a presumption of law, but as an inference of fact by the jury, in the same manner as other facts are determined in civil actions."

*Tendered Instruction No. 9.* The substance of State Farm's requested charge (that payment of the death benefit could be refused if death resulted from suicide) was adequately covered by the giving of another one of State Farm's tendered instructions. The trial court read State Farm's instruction no. 7, as amended, which adequately covered the elements of the refused instructions. Refusal to give the requested charge, therefore, was not reversible error. See *Ashton v. Anderson, supra.*

*Tendered Instruction No. 10.* Defendant's requested instruction places the burden of proving accidental death on Shuman. Because nearly identical language is contained in various portions of the court's instructions, we ordinarily would conclude that there are no grounds for reversible error. However, State Farm advances an additional argument which is somewhat novel.

State Farm notes that the court's instructions, while placing the burden of proving accident on Shuman, at the same time charges State Farm with the burden of proving suicide. State Farm has maintained throughout this case that the burden of proving accident requires Shuman to negate suicide as well. In other words, State Farm's contention is that it was not required to prove suicide and consequently the court's instructions on this point were misleading and erroneous.

The trial court's instructions on burden of proof are contained in three separate charges, only one of which was new since two of the preliminary instructions were simply reread as final instruc-

tions. The Court's instructions appear to take the position that death either occurred by accident or suicide and that the jury need only "determine whether the preponderance of the evidence is with plaintiff or the defendant." The court's charge offers no guidance in the event the evidence is in equipoise. We would agree that this failing alone renders the instructions misleading, although we offer no opinion on what would have been the proper allocation of proof in a case such as this.

We are faced here with a situation in which a party's assertion of error regarding the refusal of a tendered instruction is predicated on a challenge to the court's instructions as erroneous. Under these circumstances, the complaining party should be required to make a specific objection to those instructions given by the court which disagree with or contradict the requested charge. A party may not sit by and allow error to be committed and then attempt to take advantage of that error. *LeClerc v. Dover* (1975), 163 Ind. App. 87, 322 N.E.2d 101.

In the case at bar State Farm offered no objection at the time the preliminary instructions were given or later when the final instructions were read. See *Cochrane v. Lovett* (1975), 166 Ind. App. 684, 337 N.E.2d 565. Having failed to make a timely objection to the giving of instructions which contradicted its requested instruction on burden of proof, State Farm cannot now complain that the request should have been given to correct deficiencies in the court's charge. Cf., *LeClerc v. Dover, supra.*

### V. SUFFICIENCY OF THE EVIDENCE

State Farm's last two allegations of error concern the sufficiency of the evidence to support the verdict on both counts. In reviewing such challenges, this court will not weigh the evidence or determine the credibility of witnesses; our role is limited to an examination of the evidence most favorable to appellee and the reasonable inferences therefrom. If there is evidence of probative value to establish each material element of the cause of action, the verdict will be affirmed. *Weenig v. Wood* (1976), 169 Ind. App. 413, 349 N.E.2d 235; *Rieth-Riley Construction Co., Inc. v. McCarrell* (1975), 163 Ind. App. 613,

325 N.E.2d 844.

On the question of accidental death, we note that the jury's verdict can be supported by circumstantial evidence. *Aetna Life Ins. Co., Hartford, Conn. v. Nicol.* (1949), 119 Ind. App. 441, 86 N.E.2d 311. A reasonable inference of accidental death may be drawn, *inter alia*, from a consideration of the following: (1) the presence or absence of motive, such as whether decedent ever expressed any intention to commit suicide or was planning for his future; (2) decedent's habits and temperament; (3) his domestic and social environment; (4) his pecuniary circumstances; and (5) the physical facts surrounding death. See *Aetna Life Ins. Co., Hartford, Conn., supra*; 44 Am. Jur.2d, Insurance, § 2052 at 995.

However, the finding as to the ultimate fact of accidental death must be established by evidence or proper inferences drawn therefrom. It cannot be based upon conjecture, speculation or guess. Thus our cases emphasize that, while the jury is entitled to choose between conflicting inferences, it cannot choose between conflicting possibilities. *Aetna Life Ins. Co., Hartford, Conn., supra.*

In the case at bar we find ample evidence on each of the aforementioned factors to support a finding of accidental death. Although the physical facts surrounding Greenlee's death would support an inference of suicide, a reasonable inference of accidental death could be drawn from other established facts. For example, the jury could have considered the automobile's poor condition, that Greenlee's drinking earlier in the evening may have affected his reflexes, and the various testimony evincing a life motive on the part of Greenlee.

We turn next to the contention that there was insufficient evidence to support an award of punitive damages. The evidence most favorable to appellee reveals that Shuman met with representatives of State Farm several times before any information on the accidental death indemnity was offered. At the final meeting, insurance agent Evers first tried to get Shuman to sign a release to all claims without mentioning the death benefit and when he finally acknowledged the existence of an accidental

death benefit, he misrepresented the policy coverage to her ("under the law we don't have to pay off on him being an alcoholic"). Shuman lacked the education and experience to understand the policy terms on her own. Notwithstanding this fact, Evers continued to pressure Shuman to settle for half the claim, rather than negotiate with her attorney. Such conduct appears to fall within the parameters of the common law tort of fraud. Cf., *Physicians Mutual Insurance Co. v. Savage* (1973), 156 Ind. App. 283, 296 N.E.2d 165.

We need not consider whether in fact each element of actionable fraud has been proven, however, because the award of punitive damages herein may be sustained under the rule, announced in *Vernon Fire & Casualty Insurance Co. v. Sharp* (1976), 264 Ind. 599, 349 N.E.2d 173, which dispenses with the requirement of an independent tort. Under this rule, there are two prerequisites to a recovery of punitive damages. First, a serious wrong, tortious in nature, must have been committed. Second, the public interest must be served by the award of punitive damages. *Vernon, supra*. See also *Jos. Schlitz Brewing Co. v. Central Beverage Co., Inc.*, (1977), 172 Ind. App. 108, 359 N.E.2d 566; *Jones v. Abriani* (1976), 169 Ind. App. 556, 350 N.E.2d 635.

The case at bar satisfies both tests. We have already characterized the conduct of State Farm's insurance agent as tortious in nature. As to the second requirement, the Indiana Supreme Court has held that the public policy of this state permits the recovery of punitive damages against an insurance company. See *Vernon, supra*.

Having found no reversible error, we therefore conclude that the trial court's judgment should be affirmed in all respects.

Affirmed.

Robertson, C.J. and Lowdermilk, J. concur.

NOTE—Reported at 370 N.E.2d 941.