IN THE MATTER OF: RANDALL GRADDY, A CHILD UNDER THE AGE OF EIGHTEEN (18) YEARS *v.* STATE OF INDIANA

[No. 1-577A100. Filed May 31, 1978.]

George J. Lewis, Lineback & Lewis, of Greenfield, for appellant.

*Theodore L. Sendak*, Attorney General of Indiana, *Jane M. Gootee*, Deputy Attorney General, for appellee.

ROBERTSON, J. — Respondent-appellant, Randall Graddy (Graddy), was adjudged a delinquent child pursuant to a petition for delinquency alleging the crime of second degree burglary. From that adjudication, Graddy now brings this appeal.

The issues presented on appeal are:

1. Whether the court erred in overruling each of two motions to suppress.

2. Whether the court erred in admitting into evidence a number of the State's exhibits.

3. Whether the court erred in failing to rule on a motion to strike portions of a preliminary investigation report.

4. Whether the evidence was insufficient to support a conviction for second degree burglary.[1]

We affirm.

The facts most favorable to the State are as follows. Shortly after midnight on August 7, 1976, Corporal Harrison of the Greenfield Police Department observed Graddy in front of the Hook's Drugstore near the west end of the Weston Village Shopping Center in Greenfield, Indiana. Graddy was walking back and forth in front of Hook's and turning his head east and west as though he was looking for someone. Harrison then proceeded to the rear of the shopping center where he was notified by radio dispatch from Officer Bell that someone had broken into the Weston Village Laundromat located at the west end of the shopping center. Harrison returned to the front of the shopping center where he observed that the laundromat door was unlocked and the burglar alarm had been shut off.

Corporal Harrison and Sergeant Davis, another officer, then went to the Greenfield Pizza House which, aside from a grocery also located near the east end of the shopping center, was the only establishment open for business at that hour. Harrison found Graddy there and asked him to step outside. Graddy was then asked to accompany the officers

---

1. Graddy was not convicted of second degree degree burglary, but to support an adjudication of delinquency, the State had the burden of proving the commission of an act that would be a crime if committed by an adult.

to the laundromat. Although complaining of police harrassment and directing obscenities toward the officers, Graddy did walk to the laundromat where other police officers had gathered. In response to questions about the laundromat and a request that he empty his pockets, Graddy continued his verbal abuse of the officers, refused the request, and stepped back with fists doubled. He was then advised that he was under arrest for being a disorderly person and was placed against a patrol car. At this point, Graddy broke away and took a swing at Sgt. Davis whereupon the officers forced him over the hood of the car and placed him in handcuffs. While Graddy was in this position, Corporal Bell observed and retrieved a blue money bag which was protruding from the back pocket of Graddy's pants.

Subsequently, Graddy was searched at the police station and $58.08 was found, most of it in his left sock, the only one he was wearing. After daybreak on August 7, 1976, the mate of Graddy's sock was found in some weeds near the Greenfield Pizza House. This second sock contained coins.

At the hearing, it was adduced that the money bag taken from Graddy was the same type that the laundromat used and that this money bag contained specially made daily expenditure tickets used by the laundromat. Further, Gail Johnson, an employee of the laundromat testified that she had unlocked the laundromat door, shut off the alarm, unlocked a "changer", and left, leaving Graddy behind in the laundromat. He had a hammer with him at the time. A hammer was later found near the laundromat's battered cigarette machine.

I

Graddy asserts as separate instances of error the court's overruling his prehearing motion to suppress and his motion to suppress made during the course of the hearing. Both motions sought to suppress all evidence obtained subsequent to Graddy's encounter with Officer Harrison at the Greenfield Pizza House. The rationale for the motions to suppress is that the evidence was secured by means of a search that was not incident to a valid arrest.

Graddy contends that the above encounter was an unconstitutional seizure under U.S. CONST. amend. IV. We disagree. Under either the

standard set out in *Terry v. Ohio* (1968), 392 U.S. 1, 885 S.Ct. 1868, 20 L.Ed.2d 889[2] or the language of IC 1971, 35-3-1-1 (Burns Code Ed.) of our "stop and frisk" statute,[3] an investigatory stop of Graddy was warranted by the circumstances. Those circumstances were Officer Harrison's observations of Graddy and his conduct near the laundromat when all the business establishments at that end of the shopping center were closed, coupled with the receipt by Harrison shortly thereafter of information that someone had broken into the laundromat.

The above circumstances did not, however, justify a search of Graddy, especially in light of Officer Harrison's testimony that he was not in fear of his safety when Graddy was stopped for temporary questioning. Thus, the request that Graddy empty his pockets was clearly inappropriate, and any evidence obtained thereby would have been rendered inadmissible.

Nevertheless, Graddy's arrest for being a disorderly person pursuant to his abuse of the police officers represents a separate, albeit related, transaction, and the evidence most favorable to the State seems to provide probable cause for such an arrest. Considering Graddy's physical resistance, including the swing taken at Sgt. Davis, the subjugation and handcuffing of Graddy appear to have been reasonable responses by the police, and it is our view that under these facts, a search incident to the arrest would have been proper,

---

2. In *Terry*, it was stated that the reasonableness of an intrusion of an individual's freedom must be judged against an objective standard; "would the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action was appropriate?" 392 U.S. at 21-2, 88 S.Ct. at 1880, 20 L.Ed.2d at 906.

3. Officer's duty to interrogate persons in public place — Limitations — Exemption from civil liability. — When a law enforcement officer in a distinctive uniform, or in plain clothes after having identified himself as a law enforcement officer reasonably infers, from the observation of unusual conduct under the circumstances and in light of his experience, that criminal activity has been, is being, or is about to be committed by any person, observed in a public place said officer may stop such person for a reasonable period of time and may make reasonable inquiries concerning the name and address of such person and an explanation of his action. Said stopping and inquiry shall be limited to those matters under the enforcement jurisdiction of the particular officer and when conducted within the limits specified herein shall not constitute official custody or arrest and shall not constitute grounds for civil liability for false arrest or false imprisonment.

regardless of whether the offense precipitating the arrest is characterized as a misdemeanor or as a felony.

Graddy has contended that the aforementioned arrest for being a disorderly person did not occur. This is a question of fact which we may not decide on appeal. There was conflicting evidence from which the court could have inferred, and apparently did infer, that such an arrest was effected.

The overruling of the motions to suppress did not constitute error.

## II

Graddy next alleges error in the admission into evidence of a number of the State's exhibits.

State's Exhibit One was a money bag. State's Exhibit Seven was an evidence card completed by Corporal Bell which described Exhibit One and the circumstances by which Exhibit One came into his possession. These exhibits were introduced through Detective Sgt. Offutt, the investigating officer who received and had charge of all the evidence in this matter.

The bases for Graddy's objections were that Exhibit Seven contained inadmissible hearsay and that, by his own admission, Sgt. Offutt could not identify Exhibit One without the accompanying evidence card. Thus, it seems that the admissibility of Exhibit Seven is the key to the admissibility of Exhibit One. Indeed, we infer from the record that the evidence card was not destined as evidence until it became apparent that the admissibility of Exhibit One might be in jeopardy.

The admission into evidence of the evidence card was not error because there simply was no hearsay involved. "Hearsay evidence is testimony in court or written evidence, of a statement made out of court, such statement being offered as an assertion to show the truth of matters asserted therein, and thus resting for its value upon the credibility of the out-of-court asserter." McCormick, Evidence § 225 (1954). Neither the evidence card nor the information contained thereon were being offered as an assertion of *any* proposition. Rather, the evidence card was offered merely for the purpose of identifying the money bag (Exhibit One) as the one Sgt. Offutt received

from Corporal Bell. Even if the card had been offered for a purpose that would have made it objectionable as hearsay, any error in its admission would have been harmless, as Bell had already testified without objection to the facts appearing on the evidence card.

Because the admissibility of Exhibit One was contingent upon the admissibility of Exhibit Seven, we find no error in the admission into evidence of Exhibit One.

State's Exhibit Two, a "greenish-gold" sock, was introduced through Corporal Harrison in the following manner.

Q. I'll show you now what has been marked for identification purposes as State's Exhibit 2. Have you ever seen this before?

A. Yes, sir, I have.

Q. Where and under what circumstances?

A. It appears to be the sock that I had taken off the left foot of Randall Graddy on August 7, 1976, and it appears to be the one that I turned over to Sgt., detective Sgt. Offutt.

Graddy contends that the words "appears to be the sock" indicate that Corporal Harrison's identification of the exhibit was mere conjecture. We do not construe the definition of "appear" to be so narrow. We are satisfied that Exhibit Two was properly identified, and we find no error in its admission.

Graddy asserts as error the admission of State's Exhibit Four, a "greenish-gold" sock found near the scene and which apparently was the mate to the one taken from Graddy; State's Exhibit Three, a package of money taken from Graddy's person at the police station; and State's Exhibit Five, a packet of money retrieved from Exhibit Four. Graddy argues that the State did not establish that the sock was in fact his or that the money (Exhibits Three and Five) came from the laundromat.

We are not convinced by Graddy's arguments. As Justice Hunter stated in *Poindexter v. State* (1978), 268 Ind. 167, 374 N.E.2d 509.

[T]his Court has held that positive proof of authentication of an object is not necessary for the admission of the object into evidence. *Elliott v. State* (1972), 258 Ind. 92, 279 N.E.2d 207. Any fact which

legitimately tends to connect the defendant with a crime is admissible when only a reasonable inference may be deduced from such evidence. *Hill v. State* (1978), 267 Ind. 480, 371 N.E.2d 1303; *Hamp v. State* (1973), 157 Ind. App. 567, 301 N.E.2d 412.

Officer Davis testified that the sock appeared to be a mate to the one taken from Graddy; the sock was discovered near the scene; money (Exhibit Five) was found in the sock; money (Exhibit Three) was found on Graddy's person. We think the exhibits and the cirsumstances under which they were found permit reasonable inferences connecting Graddy with the conduct for which he was accused. We find no error in their admission.

Neither are we persuaded by Graddy's argument that State's Exhibit Three could not properly be admitted because the corpus delicti had not yet been established. We have found no Indiana decisions that state such a proposition. "[T]he order of the admission of evidence at trial is a matter that is within the sound discretion of the trial court." *Board of Commissioners of Delaware County v. Briggs* (1975), 167 Ind. App. 96, 337 N.E.2d 852, 871. Moreover, it appears from the record that the State, by circumstantial evidence, had already established the corpus delicit.

### III

Error is alleged in the court's failure to rule on Graddy's motion to strike certain portions of the preliminary investigation report filed by the Juvenile Probation Officer. Specifically, Graddy sought to delete references to an expulsion from school and prior arrests which did not result in convictions.

Clearly, the court did err when it failed to rule on a motion before it, but Graddy may not now raise such error on appeal. A party may not sit idly by, observe the commission of error without calling it to the attention of the court, and later raise that error to his advantage on appeal. *State Farm Mutual Automobile Insurance Company v. Shuman* (1977), 175 Ind. App. 186, 370 N.E.2d 941; *Bennett v. State* (1973), 159 Ind. App. 59, 304 N.E.2d 827; *Reid v. State* (1967), 249 Ind. 247, 231 N.E.2d 808.

Alternatively, Graddy could have availed himself of Ind. Rules of Pro-

cedure, Trial Rule 53.1. That he did not do so, we think militates against our consideration of the error at this time.

## IV

Finally, it is contended by Graddy that the evidence was insufficient to sustain a conviction for the offense of second degree burglary.[4] Specifically, he contends that the State did not demonstrate a breaking by Graddy — an essential element of burglary. Graddy supports this contention by pointing to the testimony of Gail Johnson wherein she stated that it was she who had unlocked the door and turned off the burglar alarm.

For two reasons, we think the failure of proof as to any "breaking" by Graddy himself is not critical to the adjudication of Graddy as a delinquent. First, the evidence is susceptible of an inference that ▮ Graddy was an accomplice to the commission of the burglary.

IC 1971, 35-1-29-1 (Burns Code Ed.) provides as follows:

> Every person who shall aid or abet in the commission of a felony, or who shall counsel, encourage, hire, command, or otherwise procure a felony to be committed, may be charged by indictment, or information, tried and convicted in the same manner as if he were a principal, either before or after the principal offender is charged, indicted or convicted; and, upon such conviction he shall suffer the same punishment and penalties as are prescribed by law for the punishment of the principal.

Our Supreme Court examined this statute in deciding *Cline v. State* (1969), 253 Ind. 264, 267, 252 N.E.2d 793, 795:

> ... This statute covers all felonies in Indiana and therefore an appellant can be held responsible if he either perpetrated the crime or aided, abetted or encouraged its commission. *George v. State* (1969), 252 Ind. 344, 247 N.E.2d 823. A defendant is responsible for the acts of his confederates as well as his own. *It is not essential that participation of any one defendant in each element of robbery be established.* Here the appellants acted in unison. Any act of one is attributable to them all. *Jones v. State* (1963), 244 Ind. 682, 195 N.E.2d 460; *Cotton v. State* (1965), 247 Ind. 56, 211 N.E.2d 158. ... (Our emphasis).

---

4. IC 1971, 35-13-4-4(b) (Burns Code Ed., Supp. 1977), repealed October 1, 1977.

Second, the court could, from the evidence before it, have concluded that the State had proven a case of entering to commit a felony[5] — breaking not being an essential element of the offense. Because entering to commit a felony is a lesser included offense of second degree burglary, *Freeman v. State* (1967), 249 Ind. 211, 231 N.E.2d 246, the adjudication of delinquency *could* have been based upon the former offense rather than the latter. Thus, where an adjudication of delinquency is grounded in the juvenile's commission of an act that would be crime if committed by an adult, such adjudication may be successfully challenged on appeal for the State's failure to prove an essential element of the crime only if that failure negates all lesser included offenses of the crime alleged.

In sum, we perceive no reversible error, and, accordingly, we affirm.

Judgment affirmed.

Lybrook, P.J. and Lowdermilk, J., concur.

NOTE — Reported at 376 N.E.2d 506.

---

5.   IC 1971, 35-13-4-5 (Burns Code Ed., Supp. 1977), repealed October 1, 1977.