# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision is not binding precedent for any court and may be cited only for persuasive value or to establish res judicata, collateral estoppel, or law of the case.

 

FILED

Feb 28 2025, 10:40 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

## IN THE
# Court of Appeals of Indiana

Michael H. Devlin, II, and Curragh Capital Partners II, L.P.,

*Appellants-Defendants*

v.

David J. de Gorter,

*Appellee-Plaintiff*

---

February 28, 2025

Court of Appeals Case No.
24A-PL-1034

Appeal from the Marion Superior Court

The Honorable Heather A. Welch, Judge

Trial Court Cause No.
49D01-1908-PL-35770

---

**Memorandum Decision by Judge Bradford**
Judges Pyle and Kenworthy concur.

**Bradford, Judge.**

## Case Summary

[1] The underlying litigation involves David de Gorter on one side and Curragh Capital Partners II, L.P. ("Curragh") and Curragh's director, Michael H. Devlin, II ("Devlin"), (collectively, "Appellants") on the other. This appeal boils down to whether an oral agreement between de Gorter and Curragh for the sale of 2010 shares of closely held stock in ClearPoint Federal Bank & Trust ("ClearPoint") was part of de Gorter's employment package with ClearPoint. For their part, Appellants claim that the stock sale was part of de Gorter's employment package. On the other hand, de Gorter claims that the stock sale was a separate and distinct transaction that was not contingent on or related to his employment agreement with ClearPoint. Resolution of the underlying litigation turned on this question because federal regulations for banks in effect at the time of Curragh's and de Gorter's agreement for the sale of the ClearPoint stock required that all employment offers be in writing and approved by the board of directors.

[2] Appellants sought a directed verdict on the question, which the trial court denied, finding that evidence supported the reasonable inference that the stock sale was separate and distinct from de Gorter's employment relationship with ClearPoint. Following trial, a jury found that Curragh had breached its agreement to sell 2010 shares of ClearPoint stock to de Gorter. The trial court subsequently ordered specific performance, ordering that Curragh complete the

stock sale once de Gorter had received all necessary approvals from the appropriate regulatory agency.

[3] On appeal, Appellants contend that the trial court erred in denying their motion for a directed verdict and abused its discretion in excluding certain evidence at trial and in ordering specific performance. Appellants also argue that the trial court erred in ordering that Devlin be jointly and severally liable for payment of the attorney's fees incurred by de Gorter during the regulatory-approval process. We affirm.

## Facts and Procedural History

[4] De Gorter is a former president, CEO, and board member of ClearPoint. Devlin is a 7.46% shareholder of ClearPoint and Chairman of its board of directors. Curragh is a holding company and a ClearPoint shareholder. Devlin serves as its managing director.

[5] ClearPoint is a federal savings bank and trust providing fiduciary, trustee, investment management, and recordkeeping services. It does not make loans. ClearPoint serves funeral homes and cemeteries across the country. De Gorter was also a member of ClearPoint's predecessor's board of directors.

[6] Beginning in or around June of 2016, Mike Polous, Robert Devlin,[1] and Curragh became ClearPoint's shareholders. At all times relevant to this appeal,

---

[1] Devlin is Robert Devlin's son.

ClearPoint had (and still has) 10,000 shares of stock. Initially, Polous purchased 5992 shares, or 59.92 percent of the company. Robert Devlin purchased 2088 shares, or 20.88 percent of the company. Curragh purchased the remaining 1920 shares, or 19.2 percent of the company.

[7]     In March of 2017, Poulos sought to sell his 5992 shares of ClearPoint stock. Eventually, Curragh agreed to purchase all of Poulos's stock. At some point Devlin approached de Gorter and asked whether he would take over as CEO of ClearPoint. Devlin and de Gorter discussed the terms under which de Gorter would be willing to accept the position. On July 25, 2017, the ClearPoint board of directors approved appointing de Gorter as CEO, and de Gorter became CEO of ClearPoint on August 1, 2017.

[8]     De Gorter had been slated to purchase 9.9 percent of ClearPoint's shares from Polous and subsequently inquired into the possibility of purchasing an additional 20.1 percent of ClearPoint's shares, for total of thirty percent of ClearPoint's stock. However, for de Gorter to acquire ten percent or more of ClearPoint's stock, he was required to obtain approval from the Office of the Comptroller of the Currency ("OCC"). As part of the review process, de Gorter was required to submit an Interagency Biographical and Financial Report ("IBFR") to the OCC. De Gorter's IBFR was submitted on December 21,

2017. On March 20, 2018, de Gorter was notified that the OCC would not disapprove his becoming a Control Party of ClearPoint.[2]

[9] Upon receiving OCC approval to become a controlling party of ClearPoint, de Gorter and Devlin discussed de Gorter purchasing 2010 shares of ClearPoint stock from Curragh. De Gorter maintained that he and Devlin had agreed that he would purchase the 2010 shares of ClearPoint stock for $1190.00 per share. The sale, however, was never completed.[3]

[10] On August 28, 2019, de Gorter filed a complaint asserting a breach-of-employment contract claim against ClearPoint and claims of breach of a fiduciary duty and tortious interference against Devlin, in his position as chair of ClearPoint's board of directors. At some point, the action was removed to federal court. The federal district court subsequently dismissed the breach-of-employment-contract claim, citing 12 CFR § 163.39(a), a federal regulation that was in effect at the time, which required employment contracts with federal savings associations to be in writing and approved by the association's board of directors. *See de Gorter v. ClearPoint Fed. Bank & Trust*, 2020 WL 509174 *6 (S.D. Ind. Jan. 31, 2020). The district court also dismissed the tortious-interference claim against Devlin. *Id.* at *10.

---

[2] Apparently, a non-disapproval serves as the equivalent of an approval.

[3] De Gorter was subsequently suspended, and eventually terminated, from his role as CEO of ClearPoint after Devlin and others accused him of providing false information in his IBFR. The OCC was made aware of the allegedly false statements, but did not rescind its approval of de Gorter to become a controlling member of ClearPoint.

[11] De Gorter then requested, and was granted, permission to amend his complaint. In his amended complaint, de Gorter alleged that Curragh had (1) breached an agreement to sell him 2010 shares of ClearPoint stock for $1190.00 per share, (2) breached fiduciary duties owed to him as a fellow shareholder, and (3) tortiously interfered with his at-will employment with ClearPoint. With respect to Devlin, de Gorter asserted claims of breach of a fiduciary duty, defamation, and tortious interference with his at-will employment with ClearPoint. The case was subsequently remanded back to the trial court.

[12] On remand, Curragh sought to dismiss the breach-of-contract claim, arguing that the claim was no different than de Gorter's previously asserted breach-of-employment-contract claim. The trial court denied Curragh's motion. Curragh later moved for summary judgment, which motion was also denied by the trial court.

[13] On September 27, 2023, de Gorter gave notice that he was electing to pursue only equitable relief at trial. De Gorter claimed that his decision to pursue only equitable remedies eliminated the need for a jury trial. For its part, Curragh insisted on a jury trial. The trial court ultimately decided to empanel a jury to determine whether a contract had existed between de Gorter and Curragh for the sale of the ClearPoint shares and, if so, whether Curragh had breached that contract.

[14] Prior to trial, de Gorter filed motions in limine, seeking to exclude certain potential evidence from trial. Specifically, de Gorter had sought to exclude,

*inter alia*, his initial complaint against ClearPoint and Devlin and his prior IBFR submissions to the OCC. The trial court granted de Gorter's motion in limine with respect to these two pieces of potential evidence.

The jury trial was held on November 13, 15, 16, and 17, 2023. Appellants moved for a directed verdict pursuant to Indiana Trial Rule 50 following the close of de Gorter's case. Appellants renewed their motion just prior to closing arguments. The trial court denied both the initial and the renewed motions, allowing the case to go to the jury. Ultimately, the jury found in de Gorter's favor on the breach-of-contract claim.

On November 17, 20, and 28, 2023, the trial court took additional evidence addressing the appropriate equitable remedy for Curragh's breach. On April 2, 2024, the trial court ordered specific performance of the parties' contract as follows:

> a. As soon as practicable, [de Gorter] shall seek approval from the OCC to become a Control Party of ClearPoint.
>
> b. [De Gorter] shall notify the Court and Curragh of the OCC's determination within 7 days of his receiving a determination from the OCC.
>
> c. If the OCC does not object to [de Gorter's] becoming a Control Party, Curragh shall—within 30 days of [de Gorter's] notice—sell 2,010 shares of ClearPoint common stock to [de Gorter] at $1,190[.00] per share, free and clear of any encumbrances other than those in the Stockholders Agreement (Ex. 2033). Together, the 2,010 shares described herein shall be referred to as the "Contract Shares."

d.  At the closing of the sale set forth above, [de Gorter] shall cause $2,391,900[.00] to be delivered to Curragh by wire transfer or immediately available funds in accordance with wire transfer instructions to be provided by Curragh.

e.  Michael Devlin and Curragh, jointly and severally, shall reimburse [de Gorter] for all costs and expenses, including reasonable attorneys' fees, that [de Gorter] incurs in connection with (a) [de Gorter's] renewed application to become a Control Party of ClearPoint, and (b) the documentation and closing of the purchase of shares from Curragh with 30 days of the filing of the IBFR with the OCC.

Appellants' App. Vol. II p. 157.  The trial court further ordered that "Curragh shall not sell, pledge, or otherwise encumber the Contract Shares, expect to transfer them by way of the transaction set forth above, pending further order of the Court."[4]  Appellants' App. Vol. II p. 158.

# Discussion and Decision

[17]  Appellants contend that the trial court erred in denying their motion for a directed verdict and abused its discretion in excluding certain evidence and in ordering specific performance of the stock sale.  Curragh also claims that the trial court erred in ordering that Devlin be jointly and severally liable for

---

[4]  The trial court also entered judgment in favor of Curragh and Devlin on the breach-of-fiduciary-duty claims alleged by de Gorter.

payment of the attorney's fees incurred by de Gorter during the regulatory-approval process.

## I.    Directed Verdict

Where all or some of the issues in a case tried before a jury … are not supported by sufficient evidence or a verdict thereon is clearly erroneous as contrary to the evidence because the evidence is insufficient to support it, the court shall withdraw such issues from the jury and enter judgment thereon[.]

Ind. Trial Rule 50(A).

A party may move for a directed verdict after all the parties have completed presentation of the evidence upon any one or more issues[,] or after all the evidence in the case has been presented and before judgment.  The purpose of a Trial Rule 50(A) motion for a directed verdict is to test the sufficiency of the evidence presented.  When ruling on a Rule 50(A) motion, a judge may assess both the quantity and quality of the evidence … but may not weigh the conflicting evidence or assess witness credibility; these are fact-finding functions within the jury's sole province.

The standard of review on a challenge [involving] a directed verdict, also known as judgment on the evidence, is the same as the standard governing the trial court in making its decision. [B]ecause trial courts do not weigh evidence or assess witness credibility on directed verdicts, we must apply de novo review. The record on appeal alone is enough for a reviewing court to assess whether, without any weighing, the evidence supports any reasonable inference in favor of the nonmovant.  The de novo standard of review aligns with our summary judgment standard of review and with the federal approach.

Upon appellate review of a trial court's ruling on a motion for

> judgment on the evidence, the reviewing court must consider only the evidence and reasonable inferences most favorable to the nonmoving party. A motion for judgment on the evidence should be granted only when there is a complete failure of proof because there is no substantial evidence or reasonable inference supporting an essential element of the claim. Judgment on the evidence is proper if the inference intended to be proven by the evidence cannot logically be drawn from the proffered evidence without undue speculation.

*Indpls. Pub. Transp. Corp. v. Bush*, 240 N.E.3d 172, 178 (Ind. Ct. App. 2024) (internal citations and quotations omitted, brackets and ellipsis in original).

[19] Appellants argue that the trial court erred in denying their request for a directed verdict. Again, on appeal, we will not weigh either parties' evidence or assess witness credibility. *See id.* The question on appeal is not whether the weight of the evidence supports a finding in favor of Appellants. Rather, the question is whether there was any evidence in the record that, without weighing said evidence, could potentially support a reasonable inference in favor of the non-movant, *i.e.*, de Gorter. The trial court found that there was, and we agree.

[20] Appellants presented substantial evidence, which they claimed proved that the stock sale was part of de Gorter's employment contract with ClearPoint and the agreement was therefore required to be in writing pursuant to 12 C.F.R., section 163.39(a). For his part, de Gorter presented substantial evidence, which he claimed proved that the stock sale was distinct and wholly separate from his employment contract with ClearPoint and, as a result, did not fall under the purview of 12 CFR, section 163.39(a). Appellants vehemently argue on appeal

that their interpretation of the evidence was the only reasonable interpretation that can be made from the evidence presented at trial. Appellants, however, only highlight evidence supporting their position in making this argument. Review of the record demonstrates that both sides presented evidence at trial which each side believed supported their respective positions.[5] Our function on appeal is not to weigh the credibility of said evidence, but rather only to see if it was admitted at trial. Given that evidence arguably supporting each of the parties' respective positions was presented and admitted at trial, we conclude that the trial court did not err in denying Appellants' motions for a directed verdict.

## II.    Admission of Evidence

[21]    The admission and exclusion of evidence falls within the sound discretion of the trial court, and we review the admission of evidence only for an abuse of discretion. An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. This Court will not reverse the trial court's admission of evidence absent a showing of prejudice.

*Reed v. Bethel*, 2 N.E.3d 98, 107 (Ind. Ct. App. 2014) (internal citations omitted). Appellants argue that the trial court abused its discretion in granting

---

[5] Appellants' argument seemingly focuses on the weight of the evidence presented at trial, rather than an alleged lack of evidence presented by de Gorter. Again, in reviewing a denial of a motion for a directed verdict on appeal, we do not look to the weight of any of the evidence presented. *Bush*, 240 N.E.3d at 178. Rather, we only look to see what evidence was presented. *Id.* We reverse a denial of a motion for a directed verdict only if the non-movant's claim is wholly lacking any evidentiary support. *Id.* Such is not the case here.

de Gorter's motion in limine, which excluded his original complaint and statements made in de Gorter's prior IBFR submission from evidence. For his part, de Gorter argues that the trial court acted within its discretion when it granted his motion in limine to exclude the challenged evidence.

[22] "The granting or denying of a motion in limine is within the sound discretion of the trial court." *Perry v. Gulf Stream Coach, Inc.*, 871 N.E.2d 1038, 1047 (Ind. Ct. App. 2007). "Ordinarily the denial of a motion in limine can occasion no error; the objectionable occurrence is the improper admission of items in evidence." *Id.* That is because "a trial court's ruling on a motion in limine is not a final decision on the admissibility of evidence; instead, it is designed to prevent mention of prejudicial material to the jury before the trial court has had the opportunity to consider its admissibility." *Ind. State Police v. Est. of Damore*, 194 N.E.3d 1147, 1161 (Ind. Ct. App. 2022), *trans. denied*.

[23] Only trial objections, not motions in limine, are effective to preserve claims of error for appellate review. Failure to object at trial to the admission of the evidence results in waiver of the error, notwithstanding a prior motion in limine. Furthermore, a claim of trial court error in admitting evidence may not be presented on appeal unless there is a timely trial objection stating the specific ground of objection, if the specific ground was not apparent from the context. To preserve a claimed error in the admission of evidence, a party must make a contemporaneous objection that is sufficiently specific to alert the trial judge fully of the legal issue. A mere general objection, or an objection on grounds other than those raised on appeal, is ineffective to preserve an issue for appellate review.

*Raess v. Doescher*, 883 N.E.2d 790, 796–97 (Ind. 2008) (internal citations and quotations omitted).

## A. The Original Complaint

Appellants made an offer of proof at trial with regard to the trial court's pre-trial decision to exclude de Gorter's original complaint.

> Also, Your Honor, the complaint in the matter, it's a case about an oral agreement. The case states the oral -- the complaint states the oral agreement. We think that is a highly probative, factual statement on -- by, and on behalf of the Plaintiff in a pleading in this case.
>
> We think it is extremely relevant and if it's prejudicial that's because it's so probative. And I think that any prejudice caused by that can be explained by the Plaintiff on the stand.

Tr. Vol. III pp. 62–63. Afterwards, the trial court indicated that it was "going to stand on the ruling [it] made" in the motion in limine. Tr. Vol. III p. 65. Appellants' offer of proof was sufficient to preserve the issue for appeal. *See State v. Wilson*, 836 N.E.2d 407, 409 (Ind. 2005) (providing that the purpose of an offer of proof is to provide the trial judge the opportunity to reconsider the prior evidentiary ruling and to preserve the issue for review by the appellate court).

With regard to the admissibility of a prior version of the pleadings, we have stated

> The rule announced in [*Boots v. Canine*, 94 Ind. 408 (1883)], bears reiteration. Withdrawn, amended, or superseded pleadings, which disappear from the record as judicial admissions, are nevertheless admissible as evidence in contradiction and impeachment of the party's present claim. The rule does not end here, however. To be admissible, the pleadings must contain evidence which is competent and relevant to the issue.

*State Farm Mut. Auto. Ins. Co. v. Shuman*, 175 Ind. App. 186, 199, 370 N.E.2d 941, 952 (1977). The question of relevancy is within the trial court's discretion. *Id.*

[26] In excluding de Gorter's original complaint, the trial court found that de Gorter had properly amended his complaint and the previous allegations were of no import. Specifically, the trial court found that

> the prior version of the pleading bears little relevance to the facts of this case for the purposes of admission under Evid. R. 401. The Court finds that original complaint reflects legal strategies determined by [de Gorter's] counsel at the time and that any subsequent changes reflected in the amended pleadings largely reflect subsequent determinations made by the same counsel through the course of this litigation. The Court does not find that any post-hoc changes to the legal theories pursued make any alleged fact concerning whether an oral contract was formed any more or less probable. To permit this presentation of the original complaint in this matter would undermine the purpose of Indiana's pleading standards, where a plaintiff may plead alternative, even contradictory theories of recovery at the outset of a case.

> The Court also finds that admitting the original complaint for impeachment purposes would be outweighed by the potential prejudicial impact to [de Gorter], implicating Evid. R. 403. As

discussed, the prior complaint was generated by [de Gorter's] counsel and then superseded by the same counsel based on new information. Much like in [*Lee v. Hamilton*, 841 N.E.2d 223 (Ind. Ct. App. 2006)], the Court finds that the minimal evidentiary value the original complaint would be outweighed by having to provide a convoluted explanation to the jury that [de Gorter] has a procedural right to seek amendments to his original pleading and that the inconsistences between the original pleadings would have to be understood within that context. Instead, the Court finds that the jurors should focus on the matters as currently pleaded without reference to prior pleadings that have been rendered null.

Appellants' App. Vol. II pp. 93–94 (internal citation omitted).

[27] In challenging the trial court's order, Appellants argue that "[t]his case is all about credibility." Appellants' Br. p. 55. Thus, they assert that they "should have been allowed to question [de Gorter] before the jury on the reason for his contradictory claims and [de Gorter] should have been put to the task of explaining them.… [de Gorter] cannot simply change stories and conceal his prior account from the jury." Appellants' Br. pp. 55–56. In support, Appellants cite to *Templer v. Lee*, 55 Ind. App. 433, 436–37, 103 N.E. 1090, 1091 (1914), in which we affirmed the trial court's decision to admit a prior version of plaintiff's complaint for payment for services allegedly rendered into evidence and to allow plaintiff to explain any differences in theories alleged in that original complaint and at trial. The fact that we found that the trial court had not abused its discretion in admitting the challenged evidence in *Templer*, however, does not mean that we must find that the trial court abused its discretion in excluding the challenged evidence in this case.

[28] The trial court found that the original allegations levied against ClearPoint by de Gorter's counsel bore little relevance to the allegations set forth against Curragh in de Gorter's amended complaint. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Ind. Evid. Rule 401. A trial court may exclude relevant evidence, however, "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." Ind. R. Evid. 403. Again, the trial court found that "the prior complaint was generated by [de Gorter's] counsel and then superseded by the same counsel based on new information." Appellants' App. Vol. II p. 93. Finding that de Gorter had had "a procedural right to seek amendments to his original pleading and that inconsistences between the [original and amended pleadings] would have to be understood within that context[,]" the trial court determined that the jury should, given the extensive evidence and complexity of the case, focus on the matters before it without reference to a prior argument that has been "rendered null." Appellants' App. Vol. II pp. 93, 94. Relying on this determination, the trial court also found that any relevance was outweighed by the potential prejudicial effect on de Gorter. Based on the complexity of the underlying case, which in its lengthy existence has included various theories, parties, and allegations, we cannot say that the trial court abused its discretion in this regard.

## B.    Prior IBFR Submission

Appellants made an offer of proof at trial with regard to the trial court's pre-trial decision to exclude de Gorter's prior IBFR submission to the OCC. Specifically, Appellants argued

> Your Honor, this is a case about credibility. Mr. [de Gorter] submitted false statements under oath in that application. And it was an application which was to satisfy a condition precedent to the agreement he seeks to enforce.
>
> We think it's highly probative of his credibility. We also think it is evidence that by failing to submit the application accurately, he didn't satisfy the condition precedent. He has testified in this deposition that it was a condition to the contract.

Tr. Vol. III p. 61. Again, the trial court indicated that it was "going to stand on the ruling [it] made" in the motion in limine. Tr. Vol. III p. 65. Appellants' offer of proof was sufficient to preserve the issue for appeal. *See Wilson*, 836 N.E.2d at 409.

It appears uncontested that de Gorter's initial IBFR contained some inaccuracies. Despite being aware of these inaccuracies, however, the OCC approved de Gorter to be a control party for ClearPoint. In filing his motion in limine, de Gorter argued "that the confidential biographical information in the IBFR submitted to the OCC does not have any impact on whether there was a contemporaneous understanding of a stock purchase deal between [de Gorter] and [Appellants], which is the sole subject of the jury trial." Appellants' App. Vol. II p. 97. Appellants, for their part, argued that the information was

relevant for impeachment purposes. In granting the motion in limine, the trial court stated that

> While the IBFR may have some relevance to whether the proposed sale of the ClearPoint shares under the alleged oral agreement could have proceeded, the Court finds that exhuming the biographical statements or misstatements in the IBFR are not relevant to the ultimate question for the jury on whether the Parties had agreed to the terms of an oral contract. The IBFR is pertinent to whether the OCC would approve [de Gorter] as a control party, and that is a separate issue from whether the Parties agreed to sufficient terms to be bound by an oral contract. The Court finds any probative value provided by the IBFR to be significantly outweighed by the prejudice.

Appellants' App. Vol. II p. 98.

[31] We agree with de Gorter and the trial court that the alleged inconsistencies, which were brought to the OCC's attention but did not alter its decision regarding whether de Gorter could become a controlling party for ClearPoint, were not relevant to the question posed to the jury, *i.e.*, whether de Gorter and Curragh had entered into an oral contract for the sale of the ClearPoint stock. Furthermore, to the extent that the alleged inconsistencies in the IBFR may have had some impeachment value, we agree with the trial court that such value was outweighed by the potential prejudice to de Gorter. As such, we cannot say that the trial court abused its discretion in excluding the IBFR.

## III.  Specific Performance

[32] The grant of specific performance directs the performance of a contract according to, or substantially in accordance with, the

precise terms agreed upon. The decision whether to grant specific performance is a matter within the trial court's sound discretion. Such judicial discretion is not arbitrary, but is governed by and must conform to the well-settled rules of equity. We will find an abuse of discretion where the trial court's decision is clearly against the reasonable deductions which may be drawn from the facts before the court.

Indiana courts order specific performance of contracts for the purchase of real estate as a matter of course. They do so because each piece of real estate is considered unique, without an identical counterpart anywhere else in the world. However, specific performance is an equitable remedy, and the power of a court to compel specific performance is an extraordinary power. Thus, the equitable remedy of specific performance is not available as a matter of right.

Our courts generally will not exercise equitable powers when an adequate remedy at law exists. Where substantial justice can be accomplished by following the law, and the parties' actions are clearly governed by rules of law, equity follows the law.

*Kesler v. Marshall*, 792 N.E.2d 893, 896–97 (Ind. Ct. App. 2003) (internal citations omitted), *trans. denied*.

## A. Monetary Damages Adequate Remedy

[33] Appellants argue that the trial court abused its discretion in awarding de Gorter specific performance of the stock sale, arguing that specific performance was unwarranted because an adequate remedy, *i.e.*, monetary damages, was available at law. Appellants argue that the stock can be, and in fact has been, valued and that the stock "is not so unique as to make damages an inadequate remedy." Appellant's Br. p. 40. In support, Appellants cite to case law from

foreign jurisdictions. *See 26 Cap. Acquisition Corp. v. Tiger Resort Asia Ltd.*, 309 A.3d 434, 474 (Del. Ch. 2023) (finding that given the specific facts and circumstances before the court, an award of specific performance was unavailable but that, if proven, the Appellant may be able to recover monetary damages); *CIMA Cap. Partners, LLC v. PH Cellular, Inc.*, 69 So.3d 293, 294–95 (Fla. Dist. Ct. App. 2010) (providing that valuation of closely-held shares is done all the time and because damages could be calculated, the trial court erred in ordering specific performance). Appellants had cited to these and other foreign cases below in support of their claim that specific performance was unwarranted because the ClearPoint stock could be valued and monetary damages would provide de Gorter with an adequate remedy. The trial court, however, was "not persuaded" by the foreign authority relied on by Appellants and instead applied relevant Indiana law. Appellants' App. Vol. II p. 137.

[34] For his part, de Gorter argues that the fact that a legal remedy may have been available does not necessarily preclude specific performance. In support, de Gorter points to our opinion in *Paul v. I.S.I. Services, Inc.*, 726 N.E.2d 318, 321 (Ind. Ct. App. 2000), in which we concluded that "[a] legal remedy is not adequate merely because it exists as an alternative to an equitable form of relief." De Gorter also points to the Indiana Supreme Court's decision in *McKain v. Rigsby*, 250 Ind. 438, 445, 237 N.E.2d 99, 103 (1968), in which the Court held that a trial court has the discretion to order specific performance "even when there is a theoretical remedy at law," noting that it is the trial court's duty "to look at the remedy and measure its fullness and its adequacy as

it applied in the case at bar." De Gorter asserts that the trial court acted within its discretion in concluding, after weighing all the evidence, that monetary damages would not be an adequate remedy for Appellants' breach.

[35] De Gorter argued below that "shares in a closely-held, highly-regulated entity such as ClearPoint should be treated as unique property similar to real estate for the purposes of determining whether specific performance is appropriate." Appellants' App. Vol. II p. 131. For their part, Appellants argued that "the ClearPoint shares at issue are not so unique as to permit the remedy of specific performance and that de Gorter could have been made whole through monetary damages." Appellants' App. Vol. II p. 133. Upon reviewing the parties' arguments and supporting authorities, the trial court agreed with de Gorter "that the shares of ClearPoint constitute unique property for which specific performance may be an appropriate remedy." Appellants' App. Vol. II p. 136. We agree.

[36] Over a century ago, we concluded that closely-held stock is unique such that monetary damages may not be an adequate remedy for a breach of a sales agreement for closely-held stock. *See Vernon, G. & R.R. Co. v. Washington Civil Tp.*, 48 Ind. App. 309, 316, 95 N.E. 599, 602 (1911). More recently, we reaffirmed that "[i]t is well settled in Indiana that a trial court sitting in equity has the authority to mold its decree to meet the case in the record when the plaintiff's complaint contains a general prayer as well as a specific prayer for relief." *Krukemeier v. Krukemeier Mach. & Tool Co.*, 551 N.E.2d 885, 889 (Ind. Ct. App. 1990). In *Krukemeir*, we affirmed the trial court's order of specific

performance of the sale of stock in a closely-held company, stating that we would not "rewrite" the parties' contract. *Id.* at 890. In doing so, we concluded that "there are cogent policy reasons to allow a trial court to order specific performance of contracts for the repurchase of a close corporation's stock." *Id.* We further concluded that "[w]ere we to deny the availability of specific performance" in cases involving a breach of an agreement to sell stock in a closely-held company, "two evils would result. First, majority shareholders could try to freeze out minority shareholders by refusing to purchase shares at the contract price. Second, minority shareholders … could petition the courts with speculative demands for inflated resale prices." *Id.*

[37] Applying our decisions in *Vernon* and *Krukemeier*, the trial court found that

> [t]o that end, the nature of the shares of any closely-held entity for the purposes of determining whether specific performance is appropriate relief following any breach of an agreement to sell such shares will depend on the specific factors that accompany the shares. In other words, there is no bright-line rule for this assessment, and there will likely be no bright[-]line rule that covers whether a proposed sale of shares in a closely-held organization will necessarily be entitled to the relief of specific performance or monetary damage as the only appropriate remedy.

Appellants' App. Vol. II p. 136.

[38] With respect to the ClearPoint shares, the trial court found that "the evidence shows that shares in ClearPoint are unique properties for which specific

performance can be an appropriate remedy." Appellants' App. Vol. II p. 137.
The trial court explained

> ClearPoint only has 10,000 shares. The shares entitled the holder to be involved with the operations of the bank. There is no obvious market for the shares sought by [de Gorter] because they are part of a closely[-]held organization rather than a publicly[-]traded company and because the amount sought requires approval from the OCC, drastically limiting the pool of potential buyers. Using the balancing test to determine the appropriateness of specific performance, the Court finds that the shares of ClearPoint at issue constitute unique property for which monetary relief would not be an equivalent remedy.

Appellants' App. Vol. II p. 137. The trial court further found that the fact that the stock could be valued, in and of itself, did not preclude specific performance, noting that the "ClearPoint shares do come with a significant number of powers and duties associated with overseeing the affairs of ClearPoint. Second, the amount sought would make [de Gorter] a 'Control Party' subject to approval by the OCC, so while the number of shares may not be a majority, they still constitute [ ] a substantial share of ownership[.]" Appellants' App. Vol. II p. 138. The trial court concluded that "the evidence shows that the ClearPoint shares sought by [de Gorter] constitutes unique property as to afford the relief of specific performance of the contract which was rendered by the jurors in the previous trial in this matter." Appellants' App. Vol. II p. 139. Given our prior decisions indicating that specific performance may be appropriate in cases involving the sale of closely-held stock coupled with the facts and circumstances of this case, we cannot say that the trial court

abused its discretion in finding that monetary damages would not be an adequate remedy in this case.

## B.     Performance Outside the Trial Court's Control

[39]     The Appellants also argue that the trial court abused its discretion in ordering specific performance because the sale could not be completed without OCC approval.  Generally, "[a] court may not grant specific performance when the subject matter of the contract no longer exists or is beyond the control of the parties."  *Risk v. Thompson*, 237 Ind. 642, 651, 147 N.E.2d 540, 545 (1958).  Because the sale was contingent on OCC approval, the Appellants argue that the subject matter of the contract is beyond the control of the parties.

[40]     The trial court acknowledged that "'[i]t is axiomatic that courts of equity will only order specific performance when the contract is capable of being performed.'"  Appellants' App. Vol. II p. 139 (quoting *UFG, LLC v. Sw. Corp.*, 848 N.E.2d 353, 361 (Ind. Ct. App. 2006), *trans. denied*).  The trial court noted that de Gorter had previously obtained OCC approval to become a Control Party, the approval for which only lapsed due to the Appellants' breach.  While the trial court acknowledged that de Gorter would have to re-obtain approval to become a Control Party from the OCC, it noted that "the ClearPoint shares at issue remain in the possession of Curragh," and that it had the "authority to order Curragh to comply with an equitable remedy that results from this action, which can include the specific performance of its contract with [de Gorter]."  Appellants' App. Vol. II p. 140.

We agree with the trial court that it would be inequitable to deny de Gorter specific performance when he "had attempted to comply with the conditions of sale by obtaining OCC approval[,]" only for that approval to lapse "due to the actions of the [Appellants] in failing to follow through on the sale." Appellants' App. Vol. II p. 140. The trial court further found

> [de Gorter's] failure to file for approval during the pendency of this litigation to be irrelevant. The law does not require parties to engage in fruitless gestures. Had [de Gorter] received approval, it very well could have lapsed again by the time the trials had concluded. He is still able to apply for approval and he must do so still to complete the stock sale.… If he fails to obtain approval, then the Court must reexamine whether specific performance is appropriate.

Appellants' App. Vol. II p. 141. The trial court made its order contingent on de Gorter receiving OCC approval and noted that it would presume "that neither the [Appellants] nor any person or entity acting in concert with the [Appellants] would interfere." Appellants' App. Vol. II p. 144. We see no issue with the trial court making its order contingent on OCC approval. *See generally Foltz v. Evans*, 113 Ind. App. 596, 613–14, 49 N.E.2d 358, 365 (1943) (affirming an award of specific performance that was contingent upon a consent from a third party when there was no proof that such consent could not be approved).

We agree with the trial court that the transfer of the ClearPoint stock from Curragh to de Gorter does not fall into the category of transfers which are unable to be performed. De Gorter has already received the necessary approval on one occasion and there is no evidence (only Appellants' unsupported

arguments) to suggest that he will not again receive the necessary approval. As de Gorter notes, "[b]ut for Curragh's breach, the sale of stock would have closed in 2018—full stop." Appellee's Br. p. 51 n.13. To deny de Gorter specific performance would be unjust, as it would reward Appellants for their bad behavior, which has led to numerous years of delay and litigation. As such, we conclude that the trial court did not abuse its discretion in ordering specific performance.

## IV. Attorneys' Fees

[43] The trial court ordered that Appellants

> jointly and severally, shall reimburse [de Gorter] for all costs and expenses, including reasonable attorneys' fees, that [de Gorter] incurs in connection with (a) [de Gorter's] renewed application to become a Control Party of ClearPoint, and (b) the documentation and closing of the purchase of shares from Curragh with[in] 30 days of the filing of the IBFR with the OCC.

Appellants' App. Vol. II p. 157. Appellants contend that the attorneys' fees award is improper as it relates to Devlin because de Gorter "obtained relief on Count I only, which was brought against Curragh only. Devlin prevailed on every claim [de Gorter] brought against him." Appellants' Br. p. 51. As de Gorter points out, however, Appellants "offer no authority for their argument that imposing that obligation on Devlin, jointly and severally with Curragh, was error." Appellee's Br. p. 51.

[44] "As a general proposition, a trial court 'has full discretion to fashion equitable remedies that are complete and fair to all parties involved.'" *G & N Aircraft, Inc. v. Boehm*, 743 N.E.2d 227, 243 (Ind. 2001) (quoting *Hammes v. Frank*, 579 N.E.2d 1348, 1355 (Ind. Ct. App. 1991), *trans. dismissed*). It has long been the law that "it is quite common, in enjoining a corporation from doing certain acts, to enjoin its officers and agents." *Janalene, Inc., et al. v. Burnett*, 220 Ind. 253, 257, 41 N.E.2d 942, 943 (Ind. 1942); *see also* Ind. Trial Rule 65(D). De Gorter argues that the trial court appropriately applied this principle to an award of attorneys' fees, *i.e.*, relying on Devlin's position as director of Curragh. While Devlin was not found personally responsible for any alleged breach of duty, it was alleged that he was the individual responsible for orchestrating Curragh's breach. Given the trial court's broad discretion in fashioning equitable remedies, coupled with the complete lack of any authority cited by Appellants supporting their claim of error, we conclude that the trial court did not abuse its discretion in this regard.

[45] The judgment of the trial court is affirmed.

Pyle, J., and Kenworthy, J., concur.

ATTORNEYS FOR APPELLANTS

Robert B. Thornburg
Maggie L. Smith
Frost Brown Todd LLP
Indianapolis, Indiana

James H. Steigerwald
Lynne E. Evans

William Shotzbarger
Duane Morris LLP
Philadelphia, Pennsylvania


ATTORNEYS FOR APPELLEE

David K. Herzog
Michael R. Limrick
Molly E. Broadhead
Hoover Hull Turner LLP
Indianapolis, Indiana